# THE COURT OF APPEALS

## OF KENTUCKY.

WINTER TERM, 1868.

| 5b | 1 |
| 91 | 545 |
| 5b | 1 |
| 101 | 44 |

CASE 1—PETITION ORDINARY—APRIL 17, 1869.

## Louisville and Nashville Railroad Company vs. Sickings.

APPEAL FROM WASHINGTON CIRCUIT COURT.

1. The Louisville and Nashville Railroad has a switch to its Lebanon Branch, near Greenwell's Mill, which was constructed and is mainly used for the purposes of transporting lumber from the mill. The Railroad Company switch off such cars as may be needed, and the proprietors of the mill load them with their lumber, and the Railroad Company transports it to market. The railroad agents had switched off two cars and securely scotched them at a safe place, when some one about the mill, engaged in loading the switched cars, uncoupled them and ran one so near to the main track that a leaning standard on this car rubbed against a passing passenger car its entire length, and came in contact with the arm of a passenger

which was resting on the window-sill of the passenger car, with his elbow protruding outwards, and broke his arm in two places, without any gross, if any negligence, upon the part of the Railroad Company, or its agents or servants. Said passenger, who was the only one injured, on account of said injury recovered a verdict and judgment in the circuit court against the Railroad Company for ten thousand dollars damages. On this appeal from the judgment of the circuit court, overruling the motion of the Railroad Company for a new trial, *that judgment is reversed and a new trial ordered. Held—*

2. Had the injured passenger properly occupied his seat and committed no gross negligence by placing his arm in the window with his elbow protruding outside the car, no accident or injury would have befallen him; that he not only contributed to his own injury, but may be said to have mainly, if not entirely, produced it; and as there are no legal means of apportioning the damages where both parties are guilty of negligence, such injured passenger cannot recover when he has been guilty of gross negligence, and the Railroad Company has not been guilty of such grade, if of any, negligence.

3. The voluntary situation of the passenger's arm in the window of the car, at the time of the injury, must in law be deemed gross negligence, which contributed to the injury, and which will preclude him from any right of recovery, unless he can show gross negligence on the part of the Railroad Company, its agents or servants, for whose conduct it is legally responsible, or that the injury was intentionally done, or that it could have been avoided by ordinary care.

4. As there was no intentional injury nor such gross neglect as to manifest recklessness and bad faith, according to the evidence, even if a recovery could be had in this case, the amount of damages would have to be limited strictly to compensation, and not given by way of punishment.

L. H. NOBLE,
W. B. HARRISON, and
R. J. BROWNE,                          For Appellant,
CITED—

17 *B. Mon.*, 578; *Louisville and Nashville R. R. Co. vs. Yandell.*

*Sedgwick on Measure of Damages*, 495, 606.

*Am. Law Reg.*, Sept., 1864; *Telfer vs. Northern R. R. Co.*

Louisville and Nashville Railroad Company vs. Sickings.

4 *Barn. & Ald.*, 30.

*Roscoe's Criminal Ev.*, 794.

2 *Kent's Com.*, 560.

*Am. Law Reg.*, June, 1868; *Bannon vs. R. R. Co.*

*Redfield on Railways, p.* 330, *sec.* 150.

9 *Car. & Payne*, 601; *Sills vs. Brown.*

*Am. Law Reg.*, June, 1868; *Indianapolis and Cin. R. R. Co. vs. Rutherford.*

3 *Allen*, 18; *Todd vs. Old Colony R. R. Co.*

7 *Allen*, 297; *Am. Law Reg.*, March, 1868; *P. and C. R. R. Co. vs. McClung.*

23 *Howard*, 166; *Bernhart vs. Rensellear and S. R. R. Co.*

9 *Harris*, 203; *New Jersey R. R. Co. vs. Kennard.*

6 *Casey*, 234; *Sullivan vs. Reading R. R. Co.*

9 *Penn. St.*, 318; *Penn. R. R. Co. vs. Zebe and wife.*

12 *N. Y.*, 236; *Holbrook vs. Utica and S. R. R. Co.*

49 *Penn. St.*, 186; *Catawissa R. R. Co. vs. Armstrong.*

1 *Greenleaf's Ev.*, *sec.* 108.

W. H. HAYS and

L. R. THURMAN,                        For Appellee,

CITED—

1 *Redfield on Law of Railways*, 516; 2 *Ib.*, 193–4, 197.

2 *Duvall*, 114; *Louisville and Nashville R. R. Co. vs. Collins.*

*Hardin's Reports*, 586; 1 *Bibb*, 248.

CHIEF JUSTICE WILLIAMS DELIVERED THE OPINION OF THE COURT:

The Louisville and Nashville Railroad has a switch to its Lebanon Branch near Greenwell's Mill, which was constructed and is mainly used for the purposes of transporting lumber from the mill.

The road company switch off such cars as may be needed, and the proprietors of the mill load them with

their lumber, and the road company transports it to market.

The road agents had switched off two cars and securely scotched them at a safe place, when some one about the mill, and engaged in loading the switched cars, uncoupled them, and ran one so near to the main track that a leaning standard would come in contact with the passing train.

This switch is situated on a curve and cut, so that objects on it cannot be seen from a passing train more than some sixty yards. The first train that passed after this car with a leaning standard had been placed in such close contiguity to the main track, was going at a rate several miles per hour under the usual speed. When the engineer, for the first time, discovered the leaning standard and car, the train was within sixty yards of the switch; he however immediately shut off the steam and the brakesmen put on the brakes without either ringing the bell or blowing the whistle, lest the passengers should unthoughtedly put out their heads to look, as was usual, and thereby incur the danger of being injured.

The leaning standard of the standing car struck the passenger train rather above the lower sash of the car windows, and rubbed it from one end to the other.

The appellee was a passenger, sitting with his arm resting on the window-sill and his elbow protruding outwards, when it came in contact with the leaning standard, which drove it back against the window-jamb and broke it in two places; for which injury he sued the Railroad Company, and recovered a verdict and judgment for ten thousand dollars, which the corporation seeks to reverse.

Sickings was the only one, out of many passengers, injured. The liability of the company depends upon the

questions whether appellee, by his own negligence, contributed to the injury, and whether, if so, the corporation, by its agents, was guilty of such negligence as to make it responsible.

In *Redfield on Railways*, section 150, it is said: In order "to the liability of a railway company as passenger carriers, two things are requisite—that the company shall be guilty of *some negligence*, which *mediately or immediately produced or enhanced the injury;* and that the *passenger should not have been guilty of any want of ordinary care and prudence which directly contributed to the injury*, since no man can recover for an injury of which his own negligence was, in whole or part, the proximate cause."

And in *Sedgwick on Damages, page* 495, it is said: "And in these, as in other cases where negligence or the infringement of the rights of others is complained of, the general rule appears to be, that at law the plaintiff, in order to recover, *must be able to show that he has not in any way contributed to the accident.* On the other hand, although he may have been in the wrong, still, if his error did not aggravate the difficulty, his right to relief will be unprejudiced; but the mere fact of the conduct of the plaintiff not being strictly regular, is immaterial. *The inquiry is, whether his irregularity has augmented the mischief; if so, as the law is inadequate to apportion the wrong, there can be no recovery.*"

In a note to the section quoted from in Redfield, two exceptions to the general rule, that where the plaintiff contributes to the injury he cannot recover, is laid down, to-wit: when the injury be intentionally done, or where it could be avoided by ordinary care on the part of the defendant.

In *Pittsburg and Connellsville Railroad Company vs. W. A. McClung* (56 *Penn. State Rep.*, 295), the Supreme Court

of Pennsylvania, in a case where the appellee's arm was injured by reason of protruding his elbow out of the window of the car in which he was a passenger, whereby it came in contact with another car standing on a switch of the appellant's road, says : "When a passenger on a railroad purchases his ticket, it entitles him to a seat in the cars. In the seat no part of his body is exposed to obstacles outside the car. He is secure there ordinarily from any contact with them. When he is thus provided with a seat, safe and secure, in the absence of accident to the train, and the carrier has a safe and convenient car, well conducted and skillfully managed, his duty is performed towards the passenger. * * * The duty of the latter on entering the car arises, namely: that he will conform to all reasonable rules and regulations of the company of occupying, using, and leaving the cars; and, after doing so, if injury befall him by the negligence of the carrier, they must answer; if he do not so conform, but is guilty of negligence therein, and if injured, although there may be negligence on the part of the carriers, their servants or agents, he cannot recover. * * A passenger, on entering a railroad car, is presumed to know the use of a seat and the use of a window—that the former is to sit in, and the latter to admit light and air. Each has its separate use. The seat he may occupy in any manner most comfortable to himself; *the window he has a right to enjoy, but not to occupy.* Its use is for the benefit of all, not for the comfort of him alone who by accident has got nearest to it. If, therefore, he sits with his elbow in it, he does so without authority; and if he allows it to protrude out and is injured, is this due care on his part? He was not put there by the carrrier, nor invited to go there, nor misled as to the fact that it is no part of his seat, nor that its purposes were not exclu-

sively to admit light and air for the benefit of all. His position is therefore without authority. His negligence consists in putting his limbs where they ought not to be, and liable to be broken, without his ability to know whether there is danger or not approaching. In a case, therefore, where injury stands confessed, or is proved to have resulted from the position voluntarily and thoughtlessly taken in a window, by contact with outside obstacles or forces, it cannot be otherwise characterized than as negligence, and so pronounced by the court. * * * In conclusion, we have simply to reassert, that when a traveler puts his elbow or arm out of a car-window voluntarily, without any qualifying circumstances impelling him to it, it must be regarded as negligence *in se;* and when that is the state of the evidence, it is the duty of the court to declare the act negligence in law."

This case reviewed many of the authorities, and found the same rule recognized by the Supreme Court of Massachusetts, in *Todd vs. Old Colony Railroad Company,* 3 *Allen,* 18, *and* 7 *Allen,* 207; and by the Appellate Court of New York, in *Holbrook vs. Utica and Schenectady Railroad Company,* 12 *N. Y.,* 236.

The same rule has been recently recognized by the Supreme Court of Indiana, *Lafayette and Indianapolis Railroad Company vs. Huffman,* 27 *Ind. Rep.,* 288; *Indianapolis and Cincinnati Railroad Company vs. Rutherford,* 29 *Ind. Rep.*; and by the Supreme Court of New Jersey, *Telfer vs. Northern Railroad Company,* 30 *N. J. Law Rep.,* 190; and virtually by this court at its present session in *Morel vs. Mississippi Valley Life Insurance Company,* in which it was held that appellant was not entitled to recover for an accidental injury to his finger caused by his thoughtlessly and unnecessarily putting his hand out of the car-window, by which it came in contact with a post.

As by the general rule, appellee had his arm in the window without authority, and in violation of the presumed objects and use of the windows, it remains to determine whether the case comes within either of the exceptions to such rule.

It is not even suggested, much less proved, or even attempted to be proved, that the contact of the leaning standard with the passenger train was intentionally produced. Could it have been prevented by ordinary care on the part of the agents and servants of the company conducting the train?

The cars had been left at a proper place, and in proper secure condition, by those operating the previous train. Neither common prudence nor regard for the interest or safety of the passengers or property of appellants required that the train should be put at an exceedingly low speed, merely because they were passing a switch where there was no reason to apprehend that there was any obstruction.

The increased speed of travel is not only an object with the corporation, but also with the passengers; and with this increased power of steam and the vast weight of the trains comes increased danger, and reason for more care and diligence; yet this increased speed is made legal by the various charters granted to such companies; and the demands of the traveling community for rapid and cheap transition makes all unnecessary delay onerous to both the corporation and customers.

The mode of propulsion, the means of travel, the usual course of business, and common objects of the carrier, are all considerations entering into the question of diligence.

It could scarcely be expected that the speed of a railway train should be seriously slackened, time wasted,

and delay to all the passengers caused, merely because it was passing an unimportant switch where there would reasonably be no apprehension of obstruction of any kind. As the proven speed of the train could, under the circumstances, be no evidence of carelessness, it remains to determine whether the situation of the standing car fixes responsibility upon the company. This could only be upon the establishment of some kind of agency for the company on the part of the mill proprietors or those controlling the switched cars.

It was no part of the company's business or undertaking to load the cars; but, as we infer from the evidence, the proprietors, as part of their own undertaking, received the cars on the switch and loaded them, and the corporation received the laden cars on the switch for transportation; and whilst the switch was part of the road, or rather a fixture to it, made to accommodate this lumber business, yet the mill proprietors controlled the cars after being placed on the switch, not as agent of the company, but on their own account, and doubtless become responsible to the company or others for the proper management of them whilst so under their control.

But, as it is perfectly apparent in this case, had the appellee properly occupied his seat, and committed no gross negligence by unthoughtedly and unnecessarily placing his arm in the window, with his elbow protruding outside the car, no accident or injury would have befallen him. As no other passenger was injured, it is not perceived how he can recover; for he not only contributed to his own injury, but may be said to have mainly, if not entirely, produced it; and as there are no legal means of apportioning the damages where both parties are guilty of negligence, it is not perceived how a plaintiff can re-

cover when he has been guilty of gross negligence, and the defendant has not been guilty of such grade, if of any, negligence. .

There is a class of cases, as in the case of *Yandell vs. Louisville and Nashville Railroad* (17 *B. Mon.*, 598), where the defendant can, by ordinary observance, care, and caution, prevent an injury, and where, failing to do so must be regarded as even gross negligence, they will be held responsible, even where some negligence has been committed by the other party, his servants or agents, as the permitting in that case the servant of appellant to ride upon defendant's cow-catcher, whereby he was injured ; but this case is not one of that class.

The voluntary situation of appellee's arm at the time of the injury must, in law, be deemed gross negligence, which contributed to the injury, and which will preclude him from any right of recovery, unless he can show gross negligence on the part of the defendant, or its agents or servants, and for whose conduct it is legally responsible.

The case of *Collins vs. Louisville and Nashville Railroad Company* (2 *Duvall*, 114), decided by this court, involved a very different question, to-wit: the responsibility of the company for an injury done through the negligence of one of its employees to another employee of a different and lower class, and which in nowise conflicts with the principles announced and approved herein.

As there was no intentional injury, nor such gross neglect as to manifest recklessness and bad faith, according to the evidence, even if a recovery could be had in this case, the amount of damages would have to be limited strictly to compensation, and not given by way of punishment.  Compensatory damages alone, as decided by this court in *Louisville and Portland Railroad Company vs. Smith* (2 *Duvall*, 557), could be recovered, and this measure

was violated in this verdict and judgment. The instructions were at war with these principles, and erroneous and injurious to appellant.

Wherefore, the judgment is reversed, with directions for a new trial, and further proceedings consistent herewith, and an adaptation of the instructions on the next trial to the evidence which may then be produced consistent with the principles of this opinion.