CHRISTOPHER EWING

*v.*

THE CHICAGO AND ALTON RAILROAD COMPANY.

| 72 | 25 |
| 24a | 382 |
| 72 | 25 |
| 57a | 64 |
| 72 | 25 |
| 61a | 434 |
| 72 | 25 |
| 88a | 686 |

1. NEGLIGENCE *in railroads—failure to fence—what is a village.* A railroad company is not required to fence its track within the limits of a village, but when an animal is killed near a village by a train of cars of the company, the presumption is, that the houses compose the village, and· if the place where the animal is killed is beyond them, it is beyond the village, and if the town extends beyond the houses, the railroad company must prove it in order to relieve itself of the necessity of fencing its road at such point.

2. Where a railroad company fails to fence its track, as required by law, it is sufficient, to fix its liability, if the plaintiff's stock, in consequence thereof, and without any contributory negligence on his part, goes upon the track of the railroad, and is there killed or injured by the company's locomotive or train.

3. The fact that the owner of stock permits it to run at large, in violation of the act prohibiting domestic animals from running at large, does not relieve railroad companies from their duty to fence their roads, or their liability for stock injured in consequence of their failure to do so.

4. SAME—*contributory negligence—permitting cattle to run at large contrary to law.* In a suit against a railroad company for stock· killed or injured in consequence of the neglect of the company to fence its road, where it appears that such stock was permitted to run at large in violation of law, the question whether the owner of the stock has been guilty of contributory negligence in permitting them to run at large is one of fact, to be determined by the jury from the circumstances of the case.

5. It is not sufficient, to charge a plaintiff with contributory negligence, in a suit against a railroad for injury to stock, to show simply that the owner permitted the stock to run at large in violation of law; but it must appear that he did so under such circumstances that the natural and probable consequence of so doing was, that the stock would go upon the railroad track and be injured.

APPEAL from the Circuit Court of Logan county; the Hon. LYMAN LACEY, Judge, presiding.

Messrs. PARKS & ALLEN, for the appellant.

Messrs. WILLIAMS, BURR & CAPEN, for the appellee.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

This appeal is prosecuted by the plaintiff in the court below to reverse a judgment rendered against him for costs, in an action on the case brought by him for the value of a cow alleged to have been killed by the negligence of the defendant.

It is shown, by the evidence, that the cow was killed by a locomotive drawing a train of cars on the defendant's road, about 3 o'clock in the morning of the 16th of December, 1872, in the immediate vicinity of Lawndale, in Logan county. The road at this point runs north and south, or at least approximately so, and Lawndale is composed of a few houses, ranging in the same direction, and has a population of about 200 persons. The train by which the cow was killed was passing south at a high rate of speed, and she was struck some little distance north of the section-house, and carried to within a short distance of that point, when she was thrown from the track, as is to be inferred from the subsequent appearance of the track, and broken pieces of the head-light and cowcatcher attached to the locomotive, found on the track, as described by the witnesses. There is some controversy whether the place where the cow was killed is within the limits of a village, it being conceded that the defendant had not erected and maintained suitable fences on the sides of its road, to prevent the encroachments of cattle at that point.

That Lawndale is a village, within the limits of which the defendant is not bound to fence its road, is sufficiently apparent from the evidence, on the authority of *Illinois Central Railroad Co.* v. *Williams,* 27 Ill. 48; but in *Ohio and Mississippi Ry. Co.* v. *Irvin,* id. 178, it was held, "the presumption is, that the houses compose the village, and if the place where the cow was killed was beyond them, it was beyond the village. If the town extended beyond the houses, the defendant should have shown it." The evidence here is clear and

uncontradicted that there are no houses or streets as far north as the section-house, and there is no evidence that the adjacent territory is a part of the village, by user or otherwise. We are, therefore, of opinion that the place at which the cow was killed was beyond the limits of the village, and that it was defendant's duty to have erected and maintained fences there. as required by the statute.

Among other instructions which the court gave to the jury, at the instance of the defendant, are the following:

"The court instructs the jury, on behalf of the defendant, that, although the jury may believe, from the evidence, that the engine of the defendant struck and killed the cow of the plaintiff, yet the jury will find the defendant not guilty, if they believe, from the evidence, that the carelessness and negligence of the plaintiff was the chief cause of the death of said cow."

"The court instructs the jury, on behalf of the defendant, that it is negligence for a person to allow his cow to run at large contrary to law."

The act of February 14, 1855, relating to the duties and liabilities of railroad companies (Laws of 1855, p. 173, sec. 1), declares, in express terms, that railroad companies failing to erect and maintain fences, as therein required, shall be liable for all damages which shall be done by the agents or engines of such companies to any cattle, etc., upon its road; and it has uniformly been held by this court, in the absence of evidence of contributory negligence on the part of the plaintiff, that it is sufficient, to fix the liability of the defendant railroad company, to prove its failure to erect and maintain the necessary fences; that plaintiff's animals, in consequence, went upon its road, and that they were killed or injured by the defendant's locomotive or train. The defendant, however, conceding that this was the law, in order to evade its application to the present case, shows, by stipulation between the parties, that the act in force October 1, 1872, prohibiting domestic

animals from running at large, was continued in force in
Logan county by a vote of a majority of the legal voters of
that county, at the regular election in November, 1872, and
insists that the plaintiff, by permitting his cow to run at large
in violation of the provisions of that act, was guilty of such
negligence as precludes him from recovering, notwithstand-
ing the negligence of the defendant in failing to erect and
maintain fences. This can only be true upon the hypothesis
that the act in force October 1, 1872, shall be held to repeal
or nullify the act of 14th of February, 1855, for, if both acts
be conceded to be in force, it must necessarily follow that the
defendant's liability, *prima facie,* will still follow from proof
of the same facts by which it was established prior to October
1, 1872, and the question of contributory negligence on the
part of the plaintiff must remain as it then was—a question
of fact for the jury, and not one of law for the court.

It was held in *Ohio and Mississippi Railway Co.* v. *Jones,*
63 Ill. 472 (and the same construction was inferentially
applied in *Chicago and Northwestern Railway Co.* v. *Harris,*
54 id. 528), that a local law prohibiting domestic animals
from running at large in St. Clair county did not repeal, by
implication, the act of 14th February, 1855. Although the
act in force October 1, 1872, is, by its terms, general, yet its
application being left to the decision of the voters in each
county, it is, in fact, a local law; so the cases cited are, in all
respects, analogous. The principle of construction, more-
over, correctly applied, as we think, in those cases, would be
equally applicable if the act in force October 1, 1872, were a
general law.

The act of February 14, 1855, is entitled "An act to regu-
late the duties and liabilities of railroad companies." It is
a most salutary police regulation, intended not merely to pro-
tect the owners of the domestic animals therein specified
from injury and loss, but to promote the safety of that very
large class of the public whose duty or inclination renders it
necessary for them to travel by rail, by preventing dangerous

obstructions to the railway tracks, which would otherwise frequently occur by these animals getting upon them. On the other hand, the act in force October 1, 1872, is simply entitled "An act to prohibit domestic animals from running at large in this State;" and it neither directly repeals nor makes any reference to the act of Feb. 14, 1855. Its effect is to repeal the common law rule in reference to domestic animals running at large, as it has been held by this court to exist in this State, and enact the old English common law rule in that respect; and the chief benefit anticipated to flow from it, and which was, no doubt, the controlling motive that induced its enactment, is the relief thereby afforded to farmers from the burden and expense of fencing their tillable lands so as to protect their crops from depredation by such animals. There is nothing, therefore, either in the language of the act itself, or in the public necessities which we may suppose induced its enactment, from which we feel authorized to conclude it was intended to relieve railroad companies from their then existing liabilities and duties in regard to fencing their roads.

The question, then, is, are these instructions in harmony with that law when applied to the evidence before us?

In *St. Louis, Alton and Terre Haute Railroad Co.* v. *Todd*, 36 Ill. 413, the action was for negligence in killing plaintiff's horses, and the act of negligence charged was in failing to erect and maintain necessary fences. The plaintiff had turned his horses into a field to graze, one side of the field being adjoining to defendant's road and no fence intervening. He had left blind bridles on his horses, which, in some degree, tended to prevent their seeing approaching danger as readily as they otherwise would. The court said: "The company being bound to fence their road, and having failed to perform that duty, were consequently guilty of negligence. It appears that defendant in error turned the horses into the field with blind bridles on, which would seem an act of negligence. The failure of the company to perform their duty did not

authorize other persons to place stock on their road, or to place them so that they would necessarily or most likely get upon the track. Nor did it absolve other parties from using ordinary care to prevent them from getting upon the road. The owner, no doubt, had the right to turn his horses into the field, but in so doing he should not have blinded them so that they would be incapable of avoiding the danger. If his so placing the horses in the field was greater negligence than that of the company in not fencing, or if his negligence rendered it impossible, with the highest degree of diligence which employees of the road could exercise, to prevent the injury, then he would have no right to recover. But the company being in default by not fencing, and that being negligence, the negligence of the owner did not excuse them from the use of every reasonable means within their power to avoid the injury, and the failure of the company to employ such means would be gross carelessness, amounting to wilful injury."

In *Chicago and Northwestern Railway Co.* v. *Harris, supra,* it was said: "But while it was a violation of law to permit them (plaintiff's horses) to be at large, the company were violating another law in permitting the gate to remain open which, if shut at the proper time, would have prevented the horses from getting upon the track and receiving the injury. It may be, appellee was liable to answer to whoever might prosecute for his breach of the statute he had violated, but that did not relieve appellants from their duty, under the statute that required them to keep their fences in such a condition as to prevent stock from getting upon their track. Because appellee may have violated another law, the company were not at liberty to omit their duty, and thereby kill appellee's horses."

Consistently, then, with these cases, we must hold that the fact the plaintiff's cow was suffered to be at large in violation of law, formed no justification or excuse for the defendant's neglect to erect and maintain necessary fences, and that, being

negligent in this respect, it was bound to the use of every reasonable means within its power to avoid the infliction of injury.

We may concede that the violation of the statute preventing domestic animals from running at large is evidence of negligence when considered only as an abstract question, but the negligence of the plaintiff, of which the defendant can avail in a suit like the present, must be contributive—that is, such that the natural and probable consequence of the negligent act tended to produce the injury complained of—and its effect in preventing a recovery must be determined by comparison with the negligence of the defendant. Thus, in *St. Louis, Alton and Terre Haute Railroad Co.* v. *Todd, supra,* it was said: "But the rule of this court is, that negligence is relative, and that a plaintiff, although guilty of negligence which may have contributed to the injury, may hold the defendant liable if he has been guilty of a higher degree of negligence, amounting to wilful injury."

Whether, therefore, the fact that plaintiff permitted his cow to run at large, contrary to law, was contributive negligence, depended upon whether he did so under such circumstances that the natural and probable consequence of his act was that the cow should go upon the defendant's track, as she did ; or whether her going there was the result of accidental circumstances which could not reasonably have been foreseen or anticipated. It is not sufficient to say that the act of permitting her to run at large directly contributed to the act, merely because if she had been kept within an inclosure she could not have got upon the track, for the same logic would prove the plaintiff guilty of contributive negligence by the simple act of owning a cow. It is the proximate, and not the remote cause that is to be considered. This, then, is purely a question of fact, as is also the question of the comparative negligence of the plaintiff and defendant, to be determined by the jury from all the evidence ; and the court, in stating that permitting the cow to run at large, contrary

to law, was negligence, clearly usurped the province of the jury. It may or may not have been negligence, in the sense in which alone the question was important in the determination of the case.

In so far as the instructions given are in conflict with the views here expressed, they are erroneous, and should not have been given.

The judgment is reversed and the cause remanded.

*Judgment reversed.*