## The Illinois Central Railroad Company

### v.

## William R. Green

1. Negligence—*contributory and comparative*. It is a requisite to the liability of a railway company as a passenger carrier, that the passenger should not have been guilty of any want of ordinary care and prudence, which directly contributed to the injury.

2. Where a passenger, while asleep, is carried beyond his station, and when the train arrives at a bridge where it stops to take water he gets up,

and, without any encouragement from any one connected with the company, goes out of the car in a dark night, and, finding no brakeman, put out his foot to reach the platform, if he could, and there being no platform there, the train gave him a jerk and pulled both feet off the car, and left him hanging by one hand, and his weight pulled him loose, and he fell through the bridge, some thirty feet to the ground, and was injured, it was *held*, that he was guilty of such negligence as to preclude a recovery for the injury.

3. Same—*carrying passenger beyond station.* In such a case, even if the company was guilty of negligence in carrying the passenger beyond his station, it would not justify him in needlessly exposing himself to danger, and the injury received had no proper connection with the act of the company, and the company can not be held responsible for any such remote and unnatural consequence thereof, as his attempting to get off at such a place.

4. Same—*in not notifying passenger not to get off on a bridge.* Where a railway train stops, in the night, upon a bridge over a stream, to take water, it not being a stopping place for passengers to get on and off, the railway company is not required, by law, to notify passengers not to attempt to get off the cars at such place, and a failure to do so is not negligence.

5. Same—*company not liable for acts of strangers.* Any encouragement given to a passenger by other passengers to attempt to get off a train at a place of danger, and not a stopping place except for water, resulting in injury to him, can not be imputed to the railway company as in any way its act, and it is not responsible for the same.

Appeal from the Circuit Court of Cook county; the Hon. W. W. Farwell, Judge, presiding.

Mr. Jno. N. Jewett, and Mr. Chas. T. Adams, for the appellant.

Messrs. Bonney, Fay & Griggs, for the appellee.

Mr. Justice Sheldon delivered the opinion of the Court:

This was an action on the case, for personal injury to appellee whilst a passenger on the cars of appellant.

The appellee took the cars of appellant at Odin, in this State, going south, at about nine o'clock in the evening of May 25, 1870. He was going to a place about seven miles east of Mt. Vernon, and took a ticket to Ashley, which is some five miles north of Little Muddy bridge. The accident occurred in getting off the train at this bridge. There was no station there,

but there was a water tank, and it was a regular stopping place for supplying water to the engines, and for no other purpose.

Appellee's account of the affair is substantially as follows: That the conductor on the train took his ticket between Odin and Centralia; that he objected to the conductor taking his ticket, because appellee was a stranger on the road, and wanted to know when he arrived at Ashley; that the conductor said to him, "give yourself no uneasiness, we always see that our passengers are put off at their regular stations;" that they stopped at Centralia, and remained there awhile; that Centralia is fourteen miles from Ashley; that he went to sleep, and remained so until he heard the locomotive whistle and the station called out of Irvington, which was seven and one-half miles from Ashley; that it was four miles from Irvington to Richview; that Irvington and Richview were the only stations between Centralia and Ashley; that after leaving Irvington he went to sleep again; that he heard the whistle, and no station announced, and then when the cars traveled along again he supposed they were going down grade, which he took to be a grade from Ashley to Richview, and he began to think he was reaching his station, and he inquired if they were coming to Ashley, and the response was, by passengers on the cars, that they had passed Ashley and were coming to the next station; that when the cars became about still he stood up at his seat and looked back, and asked the passengers if they saw anything of the conductor on the car, and they remarked they did not; that he felt that he had been neglected, and went to the door, and, finding it unlocked, turned around and said, "gentlemen, this is right, I suppose," and being answered in the affirmative, he then opened the door and went out on the platform; a light was shining on the platform, but there was no brakeman there; that he put out his foot to reach the platform, if he could, and there being no platform as he expected, it gave him a jerk and pulled both feet off the car, and left him hanging by one hand; his weight pulled him loose, and he fell and received the injury; that it was between 10 and 11 o'clock at night when he arrived at Little Muddy bridge, and was quite

dark. In falling, appellee did not strike anything till he struck the ground under the bridge, a distance of some thirty feet. He said he knew he was not at Ashley before he went out of the car.

· There was further testimony that the train, at the time, between Odin and Centralia, was under the charge of conductor Gilman. Gilman testified that he could not remember having any conversation with any passenger on that train, and says, if a passenger got on at Odin with a ticket for Ashley, he would punch the ticket and hand it back. · The train, at Centralia, was handed over by Gilman to conductor Morgan, who says that the train consisted of a sleeping coach, a ladies' car, a gentlemen's car, a second class and baggage car combined, and an express car. On leaving Centralia, he says, he went through the train and took up all tickets to local points, as far south as DuQuoin. The train was large, and stopped at all regular stations. The stations were called. That is the brakeman's business, although he did it also. That night, one brakeman was stationed between the sleeping coach and ladies' car. He would call the stations on both of these cars. The other brakeman was between the baggage car and the next car to it—the gentlemen's car. Thus located, all the brakes of the four cars were under the control of the two brakemen. The train stopped at Little Muddy creek that night to take water. The bridge is for trains to pass on. The train stands partly on the bridge while they take water. No station there, and no platform. Bridge never used except for cars. No light there that night when the train stopped. Several passengers got off at Ashley that night, among them women and children, and were attended to by the conductor. That the general custom of railroads is, to notify passengers of the stations by calling out the names of the stations as they are reached.

Thos. Winters was the brakeman stationed that night between the baggage car and the gentlemen's car. He testifies that he called the station as the train arrived at Ashley, on the night of the accident. He remembers it from the fact that

Morgan, the conductor, the next day asked him if he had called that station, and he then remembered that he had.

A Mr. Turlay, of Centralia, who was on the train, states that he saw a passenger get up and walk out of the rear door of the car at Little Muddy bridge, and he supposed that he was going into the ladies' car on account of the annoyance occasioned to him by the conversation of a party of four persons who were sitting opposite to him, Mr. Turlay being one of the number; that the man never asked any question of any one, so far as he heard.

We are of opinion the evidence in this case discloses no cause of action.

It is said there was negligence in carrying the appellee past his station.

Conceding all that is claimed in that respect, appellee would not, for such cause, be justified in jumping off the train, or otherwise needlessly exposing himself to injury, and then claim the liability of appellant for the injury he might receive in consequence. The injury here received had no proper connection with being carried past a destined station; and for such act, appellant can not be held responsible for any such remote and unnatural consequence thereof, as the injury here sued for.

It is then insisted that the stoppage of a passenger car at such a place as the one in question, without some precaution to notify passengers of danger, was an act of gross negligence.

But why notify passengers of danger? It was a stopping place for getting water, not for passengers. The bridge was intended solely for the passage of cars, not for the alighting of passengers upon it. The place for the passenger, here, was inside, not outside of the car. The train, and the appellee in his proper place inside the car, were as safe upon the bridge as they would have been any where away from it. The fact that the cars were upon the bridge, involved no danger or risk to the passenger, so long as he remained in his right place, within the car.

There was a right to presume that the passenger would keep

in his place inside the car. It was not to be anticipated that he would be getting off the car where he had no business to do so, and that there was any necessity for providing against it.

It can not be said that there was any invitation to appellee to alight where he did. The mere stopping of the train is not to be so regarded.

It may be inferred, from appellee's testimony, that he heard the whistle at the bridge. If so, it was not a signal of approach to a station. The testimony of the conductor, on that head, was: "They (brakemen) know where the tank is, and the engineer does not whistle in coming to it, with the exception that, once in a while, when the engineer sees the train is going by the tank, he will then give a little toot—whistle down brakes; don't know whether he whistled that night or not. There is a fixed whistle for down brakes, one short whistle, and is used on all portions of the line. They use the same whistle when they want to stop, except at regular stations they whistle a long whistle, and don't whistle any stop whistle at all. This short toot is used to apply the brakes between stations, where there is danger, when you want the train to stop at an irregular place where there is danger, or any thing on the track, but in stopping regularly we don't use that at all."

Appellee testified that he was accustomed to travel on railways. He was not justified in taking the whistle as notice of approaching a station. Any encouragement to get off, which, according to his testimony, he might have received from any passenger, of course, is not to be imputed to the company, as in any way its act. Appellee getting off the car where he did was an entirely uncalled for and voluntary act of his own, uninvited and unencouraged by any one in the management of the train, and he took the risk of the consequence. The act of thus getting off in the darkness of night, at an unknown and dangerous place, was one of gross carelessness, whereby appellee exposed himself to the injury which he received. The harm which one brings upon himself, he is to be considered as not having received. So far as his relations to others are con-

cerned, such harm is uncaused. *Chicago and Alton Railroad Co.* v. *Becker*, 76 Ill. 31.

Had appellee used ordinary prudence, the casualty would not have happened. Having failed in this, the company ought not to be liable. *Chicago and Northwestern Railroad Co.* v. *Sweeney*, 52 Ill. 331; and see *Chicago and Alton Railroad Co.* v. *Gretzner*, 46 id. 75; *Chicago, Burlington and Quincy Railroad Co.* v. *Van Patten*, 64 id. 511; *Chicago, Rock Island and Pacific Railroad Co.* v. *Bell*, 70 id. 103; *Todd* v. *Old Colony, etc. Railroad Co.* 3 Allen, 18; *Louisville and Nashville Railroad Co.* v. *Sickings*, 5 Bush, 1; *Pittsburgh and Connellsville Railroad Co.* v. *Andrews*, 39 Md. 329; 2 Redf. Am. Railway Cases, 552, in note to *McClurg's case*; *The Indianapolis, etc. Railroad Co.* v. *Rutherford*, 29 Ind. 82.

It is a requisite to the liability of a railway company, as a passenger carrier, that the passenger should not have been guilty of any want of ordinary care and prudence which directly contributed to the injury. 2 Redfield Railways, 224, 236.

The judgment must be reversed, there being no cause of action under the evidence.

*Judgment reversed.*