THE CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY

v.

E. W. FELTON, ADMINISTRATOR.

*Railroads—Action for Damages for Causing Death of Passenger— Apparent Danger—False Signals—Negligence—Proximate Cause—Variance—Instructions.*

1.  In an action against a railroad company by an administrator to recover damages for causing the death of the plaintiff's intestate, while a passenger on one of the defendant's trains, it is *held:* That it was negligence on the part of the engineer to give false signals which induced the deceased to jump in the way of a snow-plow on another track, there being no danger of a collision ; that the deceased was not guilty of contributory negligence in going upon the platform : that the proximate cause of his death was the negligence of the engineer ; that there was no variance between the plaintiff's evidence and the declaration ; and that there was no error in giving and refusing instructions.

2.  The officers of a railroad undertake to have knowledge of all facts of which the diligence of good railroad men could have possessed them.

[Opinion filed December 9, 1887.]

APPEAL from the Circuit Court of Will County; the Hon. GEORGE W. STIPP, Judge, presiding.

Messrs. THOMAS F. WITHROW, JAMES C. HUTCHINS and SNAPP & SNAPP, for appellant.

Assuming that the danger, which puts upon another the

alternative of a dangerous leap, rather than to remain at a certain peril, need not be a real danger, which becomes apparent, but simply an apparent danger—a danger which did not exist—the judgment in the court below is erroneous.

The deceased was not placed by the negligence of the defendant in such a situation as rendered a leap necessary.

The leading case is *Jones* v. *Boyce*, 1 Starkie, 189. This case was followed by the Supreme Court of the United States in *Stokes* v. *Saltonstall*, 13 Peters, 181.

In each of these cases, which are leading cases upon the subject, and upon which the rules, as announced in the text books, are based, the plaintiff was in a condition of real peril, which peril became apparent to him. We have examined quite a number of cases and find that in each case that condition also appeared. It may well be doubted whether the word "apparent," as used in the statement of the rule, is not used in the sense of a thing which becomes evident rather than in the sense of a thing which is unreal. The fact that the rule is held to apply, notwithstanding the actual danger did not result, in any of the cases, does not militate against this.

The proper place for the passenger is in his seat, and a voluntary abandonment thereof subjects him, and not the carrier, to the responsibility for the consequences. Pennsylvania Company v. Zebe, 33 Pa. St. 318 ; S. C., 37 Pa. St. 420 ; Stiles v. Atlantic & W. P. R. Co., 8 Am. & Eng. Ry. Cas. 195 (Geo.) ; R. R. Co. v. Clemmons, 8 Am. & Eng. Ry. Cas. 396 (Texas) ; Little Rock & Ft. S. Ry. v. Miles, 13 Am. & Eng. Ry. Cas. 10 (Ark.) ; Ala. & Gt. S. Ry. v. Hawk, 18 Am. & Eng. 194 (Ala.), citing with approval Quinn v. I. C. R. R., 51 Ill. 495, also Merrill v. Eastern R. R. Co., 139 Mass. 238 ; P. & R. I. R. R. Co. v. Lane, 83 Ill. 448 ; Abend v. T. H. & I. R. R. Co., 111 Ill. 202 ; I. C. R. R. Co. v. Slatton, 54 Ill. 133 ; Taylor v. D. O. & O. R. R. R. Co., 10 Ill. App. 311 ; C. & N. W. Ry. Co. v. Scates, 90 Ill. 586 ; State v. Grand Trunk Ry. Co., 58 Me. 176.

There is no evidence tending to show what danger or whose danger the signal was intended to avert, simply that a

passenger construed them as danger signals. The company had the legal right to sound these whistles, upon the assumption that Goodrich was inside the car. I. C. R. R. Co. v. Green, 81 Ill. 19; Ky. Cent. R. Co. v. Thomas, 79 Ken. 160.

The deceased was, under the evidence adduced, affirmatively guilty of a want of ordinary care, which contributed proximately to the injury which he received. Railway Co. v. Jones, 95 U. S. 439; Doggett v. I. C. R. R. Co., 34 Iowa, 284; Camden & A. R. R. Co. v. Hoosey, 99 Pa. St. 492. P. & R. I. R. R. Co. v. Lane, 83 Ill. 448; Quinn v. I. C. R. R. Co., 51 Ill. 495; Abend v. T. H. & I. R. R. Co., 111 Ill. 202.

The defendants could not have foreseen by the aid of the known results of human experience or knowledge that the negligence alleged could have proximately contributed to the injury received.

Messrs. G. D. A. PARKS and C. W. BROWN, for appellee.

He who, by wrongful act, neglect or default produces a sudden appearance of danger, such as may be presumed to impress the mind of a person of ordinary intelligence and judgment with the belief that it was real, and thus impel him to take instantaneous measures of escape, is liable for the injuries that ensue in the same manner and to the same extent as if the danger actually existed. T., W. & W. Ry. Co. v. Muthersbaugh, 71 Ill. 572; Wharton's Neg., Sec. 304; Coulter v. Am. U. Ex. Co., 56 N. Y. 585; Galena & C. U. R. R. Co. v. Yarwood, 15 Ill. 471; I. C. R. R. Co. v. Able, 59 Ill. 131; Ind. R. R. Co. v. Carr, 35 Ind. 510; Stokes v. Saltonstall, 13 Pet. 191; Schultz v. Chicago & N. W. Ry. Co., 44 Wis. 644–5; Gumz, Adm'r v. C., St. P. & M. R. R. Co., 52 Wis. 672; C. & A. R. R. Co. v. Becker, 76 Ill. 25; Lund v. Inhabitants, etc., 11 Cushing, 567; Caswell v. B. & W. R. R. Co., 98 Mass. 204; Trowley v. R. R. Co., 69 N. Y. 158; Buell v. N. Y. C. R. R. Co., 31 N. Y. 318; Iron Co. v. Mowery, 36 Ohio, 418; Southwestern R. R. v. Pault, 24 Ga. 356; Filer v. N. Y. C. & H. R. R. R., 68 N. Y. 124; Am. Law Reg., Vol. 25, p. 620; Baley v. Eastern R. R., 125 Mass. 63; Sweeney v. R. R. Co., 10 Allen,

(Mass.) 376; Copley v. N. H. & N. R. R. Co., 136 Mass. 9; Warren v. Fitchburg R. R. Co., 8 Allen, 233; C., B. & Q. R. R. Co. v. Sykes, 96 Ill. 162, 175; T., W. & W. R. R. Co. v. Harmon, 47 Ill. 298, 307.

LACEY J.    This was an action on the case by appellee against appellant to recover damage to the means of support to the children and next of kin of Luke H. Goodrich, deceased.

According to charges in the declaration the deceased was killed while being carried as a passenger on appellant's railroad to the city of Joliet, on the 20th day of March, 1881, through the negligence of the employes of the appellant. The facts and circumstances of the killing of the deceased are in substance, that between two and three o'clock on Sunday morning of March 20, 1881, deceased, in company with William Maltby, boarded the appellant's passenger train as a passenger, at Ottawa, Illinois, bound for Joliet, in Will County of the same State; that the passenger train was composed of two engines, a baggage car, regular passenger car and a sleeping car, and of the two railroad tracks of the appellant was on the north one, or on the left hand one if you face Joliet. It was storming violently at the time of the accident, and had been for several days, and the snow was drifting badly. The last stop of the train immediately before the stoppage at the place of the accident was at Morris, in Grundy County, about twenty miles west from Joliet.

Mr. Maltby and deceased were located in the passenger coach, on the north side, four or five feet from the hind end of the coach. At about five to seven miles from Morris, a short distance before reaching Minooka, the passenger train was stopped by a snowdrift. The deceased, Mr. Maltby and Mr. House went to the back end of the train and got onto the platform to look out at the snowdrift, and there being a solid snowdrift on the north side of the car, the three went to the other side of the car onto the steps.

Mr. House passed over to the other side and went down the steps on that side, and deceased went down the steps on the passenger car on the south side, and Mr. Maltby looked

over to the back of Mr. Goodrich. Mr. House made the observation : " My God, gentlemen, the snow plow is coming into us." House then immediately turned around and went back into the car. Mr. Goodrich, the deceased, and Mr. Maltby remained, and could see the red light behind swinging and the exhaust distinctly, two exhaust fires coming out of the smoke stack of the approaching train, and apparently pretty close to the standing train, and the question was whether to jump off the train to save themselves or to remain on, and it had to be decided quickly. The decision was to jump, and Maltby and the deceased jumped, deceased first and Maltby immediately after. At that instant the heavy snow plow with its two engines, which turned out to be on the south track, rushed by, throwing Maltby beneath the car he was on, packing him in the snow, but injuring him seriously, and he got out and got back on the car, but the deceased was caught by the passing snow plow, and so seriously hurt from contact with it that he died the next Monday night or Tuesday morning in Joliet, on account of internal injuries received from his contact with the snow plow.

At Morris the passenger train switched from the south track to the north one for the purpose of letting the snow plow get on the south track, which it did, and immediately followed up the passenger train, all of which was known to the conductor of the passenger train. On account of the big curve in the railroad at the point just behind the passenger train where it came to a stop, and the light, it would naturally appear to Mr. Goodrich, deceased, at the time, as though the snow plow was coming on the same track with the passenger train, that is, immediately behind it.

The snow drift on the north side of the train being as high as the cars there was no way of getting off on that side. Just as the snow plow was approaching, one of the engines on the passenger train gave signals of danger by giving short, sharp quick signals, one following another right off, two, three or four. Nearly all the engineers and firemen and perhaps the brakemen, jumped from the cars and ran from their train across the track to escape the supposed impending collision.

C., R. I. & P. R. R. Co. v. Felton.

The negligence averred in the declaration was the giving of the signals of danger on which deceased acted, and that the servants so negligently, ignorantly and unskillfully managed the said engines, and with such want of concert and knowledge between the servants of said appellants managing said respective trains, that the deceased was struck and killed as aforesaid, while in the exercise of due care.

The question is, were these signals of danger given by appellant's servants in order to warn the passengers of the danger of a supposed collision about immediately to take place? We think that there was ample evidence in the case from which the jury might so find. If so, we think that it was negligence in the engineer under the circumstances to give such signals, when, in fact, there was no danger of a collision, and the engineer who gave the signal should have known it. If this be so, then, was there any ground for the claim that deceased was guilty of contributory negligence in obeying the signals and making the leap? All the appearances corroborated the intelligence communicated by the signals, that there was danger. The approaching train appeared to deceased and others to be coming directly into the train on which they were riding.

What person under the circumstances would not have done the same as did the deceased? House did not, but he probably did not hear the danger signal until he had gone back into the car, when he had no time. The main cause relied on for reversal by appellants, is the charge of contributory negligence against the appellee. It is that the deceased left his seat in the passenger car and went out onto the platform, where he had no right to be, and in so doing was guilty of such negligence as to preclude recovery; for it is argued by appellant, if he had remained in the car he could not have jumped out in time to have been injured.

The I. C. R. Co. v. Green, 81 Ill. 19, is relied on as conclusive authority on this point, as well as other similar cases cited in the brief. But we think the cases cited are not applicable to the facts here. In those cases the injury was caused by deceased going into a more dangerous part of the

car which proximately contributed to the injury. In this case the going out on the platform may have been a remote cause of the injury in the same sense as his being on the cars as a passenger was the cause. If he had not been on the cars he would not have been hurt. If he had not been on the platform he would not have received any injury if he had remained there. In itself it was not dangerous to be there, so the only proximate cause of the injury was the jump and the collision. It could not have been within the reasonable contemplation of deceased when he went on the platform that the snow plow would approach in an apparently so dangerous a manner, or that the engineer would give so false and exciting an alarm. If the danger had been real his position on the platform might have been most fortunate. He might have been able to have saved himself from the wreck which no doubt would have followed.

As the train was standing still, the deceased had no reasonable grounds to apprehend danger from going on the platform. Then, the being on the platform can not stand for the proximate or contributory cause of the injury. It was the peculiar surroundings brought about by negligence, in great part at least, by the servants of the appellant, that caused the injury, and not any negligence of the deceased. As illustrating this question of remote and proximate agency we cite C. & A. R. R. Co. v. Ewing, 72 Ill. 25.

The appellant is responsible for the acts of the engineer in giving false alarms. C., B. & Q. R. R. Co. v. Sykes, 96 Ill. 162; T., W. & W. R. W. Co. v. Harman, 47 Ill. 298; C., B. & Q. R. R. Co. v. Dickson, 63 Ill. 151; also Wesley City Coal Co. v. Healer, 84 Ill. 126. Had the engineer been in possession of the knowledge that the law holds him to, he could not have been deceived by appearances as he was deceived, and would not have given the false signals which he did. If he gave them wilfully it would be worse than inexcusable in any light it could be looked at. The jury may have thought it was wilful. No engineer was put on the stand to explain the matter, and one of the engineers, he who did not desert his engine, was in the court room at the time of the trial and was not called to the stand.

He may have been the one who gave the alarm signals and the fact, if he did so, that he remained on the train, would give color to the thought that he did it wilfully, though it may be with no intention to do harm. But certainly it would be negligence to alarm passengers under such circumstances· If the signals were given in good faith, believing there was danger, then good railroading required that he should have been in possession of such facts in regard to the circumstances as would have rendered such a mistake impossible.

The two trains started from Morris nearly together, the passenger train on which deceased took passage a few minutes ahead. It was in a dark, stormy night. It was essential that the conductor and engineer of each train should know on which track the other designed to or was running, in order to guard against accident. The rule of law is "that the officers of a railroad undertake to have a knowledge of all facts of which the diligence of good railroad men could have possessed them." Wharton on Negligence, Secs. 157, 158, 387 and 415; Warren v. Fitchburg R. R. Co., 8 Allen, 231.

If they do not have such knowledge they are held to be answerable the same as though they had it; as the law will conclusively presume they had it. If the engineer had either actual or constructive knowledge that the snow plow was on the south track it was negligence in him to blow the alarm whistle. He ought to have been acquainted with the curve in the track immediately west of his train and the tendency to optical illusion in reference to the following train appearing on the same track with his own. With such a knowledge it would have been impossible for a good railroad man to have made such a mistake.

On the trial the appellant made no effort to explain or rebut the strong proof of negligence offered by appellee, though one of the engineers was at hand. See C., B. & Q. R. R. Co. v. McLallen, 84 Ill. 109.

We find no error in the giving of appellee's instructions by the court, or in refusing those offered by appellant that were refused.

There was also no error in the court below refusing to ex-

clude appellee's evidence on the grounds of variance between it and the declaration, or to instruct that there was a variance. As to the first count in the declaration no cause for variance is attempted to be shown and as to the second count no variance is claimed except the proof shows that the injuries were received while appellee was not on the cars, while the declaration charges it was received while a passenger on its train. It is true enough that when he received the injury he was off the train, but under the circumstances we are unable to hold that he had lost his rights as a passenger while off. The law would regard him as still a passenger on the train and in that particular there would be no variance between the proof and declaration.

There is no error in the instruction given on behalf of appellee to the effect that it was the duty of the jury to give certain damages. The damages mentioned in the instruction were those actual in their character and not exemplary, as they were in the Chisholm case, cited in 79 Ill. 584.

Perceiving no error in the record the judgment of the court below is affirmed.

*Judgment affirmed.*