### Frederick Rabberman v. Samuel Hunt, Receiver Toledo, St. L. & K. C. R. R. Co.

1. RAILROADS—*Duty Toward Domestic Animals Running at Large—Fences.*—The law prohibiting domestic animals from running at large' does not relieve a railroad company from its duty under the statute to erect and maintain fences along the sides of its right of way, nor from liability, if the stock is killed or injured in consequence of its failure to observe that duty. Whether the owner is guilty of contributory negligence in permitting his stock to run at large or in failing to maintain a sufficient fence to prevent their escape from his own premises, usually is not a question of law for the court, but a question of fact for the jury to determine from all the circumstances of the case as shown by the evidence.

**Action for Killing Domestic Animals.**—Appeal from the Circuit Court of St. Clair County; the Hon. MARTIN W. SCHAEFER, Judge, presiding. Heard in this court at the August term, 1899. Reversed and remanded. Opinion filed March 16, 1900.

B. H. CANBY and SILAS COOK, attorneys for appellant.

CHARLES A. SCHMETTAU and MESSICK, MOYERS & CROW, attorneys for appellee; CLARENCE BROWN, of counsel.

MR. JUSTICE CREIGHTON delivered the opinion of the court.

This was an action on the case by appellant against appellee, to recover for certain hogs of appellant, alleged to have been killed on the railroad track of appellee, by its engine and cars. The suit was commenced in the City Court of East St. Louis, and sent on change of venue to the Circuit Court of St. Clair County, where it was tried by a jury, resulting in a verdict and judgment in favor of appellee.

The state of the evidence, so far as it is material to any issue involved in this appeal, is in substance, as follows: The evidence shows that the railroad right of way runs through appellant's land; that the road has been open and in use for some years, and that appellant's farm is not within the limits of any city, town or village.

The testimony on the part of appellant tends to show that he kept his hogs in a lot on the north side of the right of way; this lot was enclosed by a fence constructed partly of boards and partly of rails; that this fence was in good condition and sufficient to keep hogs from getting out, but that occasionally they would break through; that he watched his fence and did all that he could to keep his hogs from getting out of the lot; that on or about the 14th day of November, 1898, he found one of his hogs on appellee's right of way; that it had been cut in two and there was blood along the rails and track; that he made an investigation and found hog tracks along the county road on the north side of his land, and along the private road on the west side, and found brightly rubbed marks on the gate; that the openings in this gate were from six to ten inches wide; that a day or two, or a few days after this, he found another one of his hogs in the ditch by the side of the track and that this hog had its back broken. One of these hogs was about six months old, weighed about forty pounds and was worth about four dollars; the other was smaller and was worth about two dollars and a half.

Appellee introduced evidence tending to show that appellant's fence around his hog lot, on the north side of his land, was out of repair and not sufficient to prevent his hogs from getting out through the same, and also some testimony tending to show that he did not keep his small hogs in the hog lot on the north side of the right of way, but kept them in a lot on the south side of the right of way; that appellant's land is joined on the south side by the land of one Haskins; that the fence between their said lands is owned by the said Haskins, and that this fence is in poor condition, and not sufficient to prevent small hogs from getting through. No witness testified to having seen the hogs go through the gate or fence or to having seen them in any manner go upon the right of way.

Appellant offered to prove that the wire fence along the right of way, where it joins the gate, on the north side, was in bad condition, and so defective that hogs could easily go

through it; that the wires were loose and could easily be pressed apart to the width of a foot.   This testimony was objected to by appellee, and the court sustained the objection.

The point at which the hogs passed through the enclosure onto the right of way was determinable only by proper inference to be drawn by the jury from the evidence.   In such case all the surrounding conditions and circumstances bearing upon the question are proper to be given in evidence, and this included the condition of the fence at any place where, in reasonable probability, under all the facts appearing in the case, the stock might have entered. While it is true, as an ultimate fact, that the condition of the fence at all places other than where the stock actually entered, is immaterial, yet, when the place of entrance is to be determined by the jury, then the condition of the fence may be shown at any and all places where the evidence tends to show that the stock in reasonable probability might have entered.   The question objected to calls for the condition of appellee's fence in the immediate vicinity of where the hogs must have gone through, and at the very point where, if the condition of the fence was such as to invite it, they most likely did go through.   The court erred in refusing to admit the evidence offered.

The principal question in this case arises as to the correctness of certain instructions given by the court on behalf of the appellee, in which it is, in substance and effect, laid down as the law that if appellant failed to maintain his own fence around his lands other than those adjoining appellee's right of way, in a reasonably safe condition, and thereby his hogs escaped from his hog lot and were killed on appellee's railroad, then appellant could not recover, and that in such case the jury must find appellee not guilty, even if appellee's fence, enclosing the road at the place where the stock came through onto the right of way, was insufficient to keep such stock from getting on the road.   This makes it such contributory negligence, in law, for an owner of stock to allow it to run at large or to allow his fence to

remain in such condition as that his stock may escape from his own premises, as to entirely relieve a railroad company from any duty or liability to such owner for failure on the part of the company to comply with the statute requiring it to fence its road.

The law prohibiting domestic animals from running at large does not relieve a railroad company from its duty, under the statute, to erect and maintain fences along the sides of its right of way, nor from liability, if stock be killed or injured in consequence of its failure to observe that duty. Whether the owner is guilty of contributory negligence in permitting his stock to run at large or in failing to maintain a sufficient fence to prevent their escape from his own premises, usually is, and in this case was, not a question of law for the court, but a question of fact for the jury to determine from all the circumstances of the case as shown by the evidence. Our courts have had this question under consideration many times. The following are some of the cases in which it is discussed and determined. Wabash Railroad Co. v. Perbex, 57 Ill. App. 62; Atchison, T. & S. F. R. R. Co. v. Cupello, 61 Ill. App. 432; Ewing v. C. & A. R. R. Co., 72 Ill. 25; R., R. I. & St. L. R. R. Co. v. Irish, 72 Ill. 404; Cairo & St. L. R. R. Co. v. Murray, 82 Ill. 76, and C. & St. L. R. R. Co. v. Woosley, 85 Ill. 370.

We have discussed this question somewhat more at length in our opinion, filed at the present term of this court, in the case of George T. Jarvis, receiver of the Louisville, Nashville & St. Louis Consolidated Railroad Company, v. Daniel W. Bradford.

The court erred in giving the instructions complained of.

The judgment of the Circuit Court is reversed and the cause remanded.