Toledo, Wabash &. Western Railway Company

*v.*

Arthur Harmon.

1.   New Trial—*verdict on conflicting evidence.* The verdict of jury will not be disturbed unless manifestly against the weight of evidence, where the latter is contradictory.

2.   Railroads—*degree of care required in cities and along public thoroughfares.* Railroads operating their franchise in populous cities, and over and along public thoroughfares, where the hazard to persons and property is great, will be held to the exercise of a high degree of caution and skill, commensurate with the extra hazard.

4.   Same—*when liable for acts of employee.* Where an employee of a railroad performs an act incident to his employment, unskillfully, negligently, recklessly, or wantonly, and thereby persons whose fault does not contribute, are injured, the company will be liable.

4.   Same—*not released from liability, because the wrongful acts were against instructions.* The fact that the company may have rules and by-laws, prohibiting the performance of wrongful and dangerous acts, or that particular instructions may have been given how to do a particular thing, will not release the road from liability.

5.   Same—*where servants of, pervert agencies intrusted to their control to the perpetration of wanton mischief, the company will be liable.* An engineer, while his locomotive was standing near a crossing at the instant a person was crossing the track in front of his engine, negligently or maliciously caused the steam to escape, whereby the team was made to run off and injury inflicted: *Held,* that the company were liable.

APPEAL from the Circuit Court of Morgan county; the Hon. CHARLES D. HODGES, Judge, presiding.

This action was in case, to recover for injuries received by Harmon, by the running away of his team, caused by an engineer of the road letting off steam from his engine with a loud noise, just as Harmon was crossing the track. The declaration contained two counts, each charging the steam to have been let off wantonly and maliciously, but one stating that the locomotive was standing still, and the other, that, while moving, the steam was let off. The counts differed, too, as to whether the engineer blew the whistle or let off steam.

A demurrer to the declaration was interposed and over-ruled. Defendants then pleaded the general issue.

For the plaintiff, three instructions were given:

1st. The jury, if they find the defendants guilty, may assess the damages from all the facts, and may include punitive damages, but not to exceed $3,000.

2d. If they find that defendants' engineer, with intent to frighten plaintiff's horses, unnecessarily and wantonly let off steam or blew a whistle, so that plaintiff's horses ran off and injured him, defendants are guilty, unless plaintiff is also guilty of negligence.

3d. Malice in the engineer need not be proved positively, but may be inferred.

For the defendants, nine instructions were asked, and all but the second and fifth were given:

1st. If the plaintiff's neglect co-operated to cause the injury, defendants are not liable.

2d. If the jury believe the act of the engineer to have been willful and malicious, and that the act was not authorized by any special or general command or permission, expressed or implied, of defendants, defendants are not liable. (Refused.)

3d. Unless they believe the act to have been willful and malicious, as alleged, they must find for defendants.

4th.   If the acts were usual and necessary at the time for the proper, running of the engine, they will find for the defendants.

5th.   If they believe the injury to have been caused by the willful and malicious act of the agent of the defendants, they will find for the defendants.   (Refused).

6th.   In the absence of evidence to the contrary, the presumption is that defendants ordered their servant in charge of the engine to do lawful acts in a lawful manner.

7th.   That unless they believe that the engineer willfully, by his willful and malicious act, so managed his engine as to frighten plaintiff's horses and cause said injury, they will find for defendants.

8th.   Unless the jury believe the injury to have been caused by the willful and malicious act of defendants' servant, they will find for defendants.

9th.   If, upon the weight of evidence, the jury can conscientiously explain the occurrence upon the theory of accident, and without a willful and malicious purpose, they will find for defendants.

Verdict for plaintiff.   Damage, $500.   Judgment in accordance therewith.

Motion for new trial by defendants upon the following grounds:

1st.   The court admitted improper evidence to go to the jury.

2d.   The court erred in giving the 1st, 2d and 3d instructions asked by the plaintiff.

3d.   The court erred in refusing to give the 2d and 5th instructions asked by defendants.

4th.   The verdict of the jury is contrary to the law and evidence of the case.

Motion overruled and appeal taken.

Messrs. Robertson & Barnes, for the appellant.

1.  The court erred in giving plaintiff's second and third instructions, and in refusing defendants' second and fifth instructions.  This point presents the question whether a master is responsible for the unauthorized, willful and malicious act of his servant.  Negligence in any degree is not the *gist* of this action.  That the master is liable for the unlawful act of the servant, if done under authority or within the scope of the employment, is undoubted.  That is not claimed here.  If the master receives the fruits of the unlawful or even willful act, then he is liable.  This is not claimed here.  The courts have gone no farther than this.  *Illinois Central R. R. Co.* v. *Read*, 37 Ill. 484; *St. Louis, Alton & Chicago R. R. Co.* v. *Dalby*, 19 Ill. 360, and cases there cited.  In this case, which goes the farthest, the agent was acting under authority, and within the scope of his employment.  Here, on the other hand, the act was willful and malicious.  The agent used the engine of the corporation as the instrument of his malice.  The case would be the same if he had picked up a crow bar belonging to the corporation, and knocked plaintiff down with it.  Would the corporation be liable?  Clearly not.  *Illinois Central R. R. Co.* v. *Downey*, 18 Ill. 259; *Johnson* v. *Barber*, 5 Gilm. 430; *Tuller* v. *Voght*, 13 Ill. 285, (approving *McManus* v. *Cricket*, 1 East 106); *Armstrong* v. *Cooley*, 5 Gilm. 512; *Ross* v. *Madison*, 1 Carter (Ind.) 281; *Foster* v. *The Essex Bank*, 17 Mass. R. 509 and 510; *Wright* v. *Wilcox*, 19 Wend. 343.  These authorities show that, although the principal is liable for the torts and unlawful acts of his agent, if done under authority or within the scope of the employment, yet, he is not liable for willful and malicious injuries.

Messrs. Ketcham & Atkins, on the same side, in support of the same view, cite the following additional authorities:

Story on Agency, §§ 456, 318; 1 Hill 480; 3 Smith (N. Y.) 367; 1 East 106; Smith on Mer. law, 69-70; 4 Barn. and

Ald. 590 ; 20 Conn. 284 ; 2 Comstock 479 ; 5 Blackf. 149 ; 19 Wend. 343 ; Smith's leading cases 310.

At common law, a master is not liable for the willful trespass of his servant, which is not committed in the furtherance of his business. *Tuller* v. *Voght*, 13 Ill. 277 ; *Johnson* v. *Barber*, 5 Gilm. 425 ; *Foster* v. *Buck*, 17 Mass. 479.

The act must be done in the course of the employment, and not a willful departure from it. See opinion of Judge CATON, 13 Ill. 285 ; Redfield on railroads, 381-3, and notes ; 15 Barb. 574 ; *Ross* v. *Madison*, 1 Carter, 281.

In the case from 15 Barb., the company, it was held, was not liable for a willful act of the servant, although directed to be done by the president, upon the ground that even the president had no authority to command the perpetration of an unlawful act.

Messrs. MORRISON & EPLER, for the appellee.

The engineer of appellants was managing the engine of the company—the business assigned him by his employers. His act was the act of the company, and the action is well laid. See DENMAN Ch. J. in *Rex* v. *Medly*, 6 C. and P. 292. " It seems to me both common sense and law, that if persons, for their own advantage, employ servants to conduct works they must be answerable for what is done by those persons."

By placing the engineer in charge of the locomotive, and suffering him to use the same, in operating the road of appellants, the company consented to be bound by the acts of the servant ; his acts bind the company, whether done " negligently or cautiously, heedlessly or purposely." Redfield on R. R. p. 383, note 6. The case of *Illinois Central Railroad* v. *Reed*, 37 Ill. R. p. 509, fully adopts the rule in the above case.

The case in 38 Ill. 167, referred to by appellants, is in no way inconsistent with this position.

But the case of the *Alton Railroad Co.* v. *Dalby*, 19 Ill. 360, held clearly the same doctrine. That case was in trespass, and rightly; the injury inflicted by the conductor was direct—upon the person of the passenger. The injury in this case was consequential, not direct, and case as against the railroad company is the proper remedy.

Mr. Justice Walker delivered the opinion of the Court:

The evidence in this record is conflicting, and was properly left to the consideration of the jury. In such cases this court will not disturb the verdict, unless we can see that it is manifestly against its weight. An attentive examination of the testimony fails to satisfy us that the finding is unwarranted. On the contrary, we think it preponderates in favor of the finding of the jury. If the agents and employees of a railroad company, while in the discharge of their duty, act with such negligence as to occasion injury to others who are not in fault, the company must be held liable in damages for the wrong. The well being of society requires these bodies to employ careful and skillful agents; and that they in the performance of their duties shall have due regard to the safety and rights of other persons. They are held to a high degree of caution and skill while exercising and enjoying their franchises. Negligence, or want of skill by their agents, producing injury, will create liability. And when they locate their stations and depots in populous cities and on thoroughfares, they must, for the protection of community be held to a degree of care commensurate with the greater danger such a situation involves. When located at such places, they know the hazard that must ensue, and must be held to an increased degree of care and diligence equal to the greater hazard. The life and property of individuals cannot be lightly or wantonly placed in jeopardy. If that might be done, then these great instruments of prosperity, and agents in the development

of the resources of the country, and promoters of its commerce, instead of a blessing, would become a nuisance, if not a curse to our citizens.   If the lives of men, or their property, must be endangered in the pursuit of their ordinary and legitimate business, while lawfully passing over our public highways, and no person can be held responsible, then it would be an injury instead of a blessing to community that they were constructed.

The great object of government is to afford protection to the life, liberty and property of the citizen, and in the pursuit of that object all interests should be protected, and no one branch of business or interest be permitted to injure or destroy others.   Although not equally beneficial to community, the least productive interest or pursuit is nevertheless important as contributing to the prosperity of the whole community. And to the person engaged in such a pursuit, it is as important as the vast enterprises of the more favored of his fellow citizens are to them, and he is, under the law, entitled to an equal degree of protection in its pursuit and enjoyment.   And the purpose of creating government would be perverted if the great and profitable pursuits were permitted to disregard and trample upon the more humble and less lucrative occupations and callings.   And however important and even essential, these great creations of modern civilization and enterprise may be to society, they must be required to regard the rights of others, to the same extent that individuals are held to avoid injury and wrong to them and to each other.

Appellee had the undoubted legal right to travel this public highway, in the pursuit of his business, pleasure, or even from caprice, and appellants had no right by their agents, to unnecessarily hinder, obstruct or endanger him or his property, while thus exercising his rights.   Both parties have the right to pass and repass over the roads in the modes adapted to their construction ; and each is under equal and reciprocal obligations to observe the rights of the other ; and neither can

wilfully, wantonly or negligently, endanger, obstruct or delay the other in the enjoyment of his rights without incurring liability for the injury; and each party, in the exercise of his right, must observe the highest degree of prudence, circumspection and skill, to avoid the infliction of injury to others.

In this case, there is nothing disclosed by the evidence, from which it can be inferred that appellee did not take every precaution which prudence could dictate, to avoid injury. He checked up his team before reaching the road crossing, and awaited, not only the passage of the engine, but until it came to rest before he attempted to cross. He says, that while thus waiting, the engine driver looked at him as he passed. And this he must have done, if he was not reckless of his duty; and if he did see that he was waiting to cross the track, he was bound to afford all reasonable facilities for the purpose. And having the control of his locomotive, and the steam by which it was propelled, he was required to so use and control them, as to avoid injury to others, acting with prudence and caution. He had no right after he saw appellee start to cross the track, to then put his engine in motion and run it against appellee's wagon and team, nor had he the right to so use the steam from his engine as to frighten appellee's horses. He saw that they were restive and afraid of his locomotive, and must have known that the escape of steam would, most probably, produce the result that ensued; and it was his duty to have prevented its escape, and avoided the disastrous results that followed from the noise of the escaping steam, which is highly calculated, as all observation teaches, to alarm cattle and horses. Knowing this, he should have been on his guard, and used all necessary precautions to prevent injury.

It can make no difference in its results to appellee, whether the escape of steam was the effect of negligence, or from wanton and willful purpose. The engine driver does not pretend that there was any necessity, nor can we imagine any, for the escape of steam at that time. He had stopped his locomotive,

39—47TH ILL.

and there could be no necessity to start it until appellee had crossed the track, which could have required, at most, not more than a very few seconds. There could have been no danger of an explosion, nor is it pretended there was. Then why the necessity for the escape of steam, either through the whistle or the escape pipes? It must have been the result of gross negligence under the circumstances, or of wanton and willful purpose, in total disregard of the security of the life and property of appellee.

It is, however, contended that if the engine driver did the act wantonly or willfully, it was outside of his authority, and hence the company are not liable for the damages resulting from the misconduct of the engineer. He was their servant, was engaged in the performance of the duty assigned to him, and if, while so engaged, he used the engine put into his possession and under his control, to accomplish the wanton or willful act complained of, why should not the company be held liable? It is said that he was not employed for the purpose, nor directed to perform the act; and it is equally true that they do not employ engineers to inflict injuries through negligence or incompetency, and yet these bodies are held liable for such acts of their servants.

In the case of the *Chicago, Burlington & Quincy R. R. Co.* v. *Parks*, 18 Ill. 460, it was urged that the conductor, in ejecting Parks from the train, did not only an unlawful, but an unauthorized act, and the company were not liable for damages. The law prohibited him from removing or forcibly ejecting a passenger for refusing to pay his fare, except at a usual stopping place, while he put him off by force at a different place. In that case, the agent of the road did an act prohibited by the statute and outside of his authority, and yet the company were held liable. In the case of the *Ill. Cent. R. R. Co.* v. *Reedy*, 17 Ill. 582, it was said that while trespass might be maintained against the agents of the company for their immediate acts, yet the corporation who employed them

would be liable in case for the damage inflicted by their servants; and if authority by the company to perform the act were to be made the test of liability, they would always escape, as they would never authorize their agents to do an unlawful act, or to omit any duty, or to carelessly or negligently perform others, whereby injury would result to individuals.

This court held, in the case of the *St. Louis, Alton & Chicago R. R. Co.* v. *Dalby,* 19 Ill. 353, that a railroad corporation is liable, in an action of trespass, for an assault and battery committed by an employee of the company on a passenger on the train ; and this rule was fully approved in the case of the *Ill. Cent. R. R. Co.* v. *Read,* 37 Ill. 484. It was there said, in answer to the objection to the want of authority in the agent to commit the act, or that the company had no power to order a lawful act to be done in an improper mode, or so that it will violate the rights of others, and therefore, such act must be regarded as that of the agent, and not of the company; that such a rule would release railway companies from liability from all affirmative acts violating the rights of others; that in all such cases the ready answer would be, that because such act was wrongful, therefore it was unlawful, and not authorized by its charter, but the individual act of their agents, who exercise its functions. That the result of the position would be, that the company could not be liable for a trespass, because no corporation can be empowered to commit a wrongful act.

There can be no pretense, that where an agent commits an act willfully, or otherwise, while he is not engaged in the performance of his duty to the company, they would be liable for the wrong ; or even while so engaged, if he were to personally perform an act not connected with the business of the corporation, they would be liable. But when employed in the discharge of his duty, or while engaged in operating their engines and machinery on their road, if he uses such agencies in an unskillful manner, or so negligently as to occasion injury

to another, or even if, while so engaged, he willfully perverts such agencies to the purpose of wanton mischief and injury, the company should respond in damages. They should not be permitted to say, it is true he was an agent, was authorized by us to have the possession of our engines, was engaged in carrying on our business, and while so engaged, he willfully perverted the instruments which we placed in his hands to something more than we designed or authorized, and, therefore, we should not be liable for the injury thus inflicted.

In this case, so far as the record discloses, the engineer was properly engaged in the use of the machinery of the company, and it can make no difference whether the escape of steam was negligently permitted, or willfully done by the engineer, any more than if he had willfully run his engine against appellee's wagon and team, and thus produced the injury. The question, whether it was negligently or intentionally done, can, we think, make no difference in results. It then follows that the instructions were not improper, and no error was committed by telling the jury that the company were liable if the act was intentional on the part of the engineer. The judgment of the court below is affirmed.

*Judgment affirmed.*