CHICAGO, BURLINGTON AND QUINCY RAILROAD CO.

*v.*

URIAH W. DICKSON.

63   151
23a   56
24a  382
63   151
155   24
63   151
156   17
63   151
96a  1462

1. RAILROADS—*liability of company for wanton and malicious acts of employees.* Where the servants of a railroad company, while in the discharge of their duties, pervert the appliances of the company to wanton and malicious purposes to the injury of others, the company is liable for such injuries.

2. COMPARATIVE NEGLIGENCE—*of erroneous instruction in regard to—whether will reverse.* In an action against a railroad company to recover for injuries to the plaintiff occasioned by the alleged negligence of the defendant, the court, at the instance of the plaintiff, instructed the jury incorrectly in regard to the rule of comparative negligence: *Held*, as the evidence showed no negligence on the part of the plaintiff to compare with that of the defendant, the latter could not be heard to complain of the erroneous instruction.

3. WEIGHT OF EVIDENCE—*how to be determined.* In determining an issue of fact it is not mere numbers of witnesses that should control, but a variety of considerations enter into the determination as to where the weight of evidence lies; of these are the intelligence of the witnesses, their fairness and means of information, and corroborating circumstances.

APPEAL from the Circuit Court of Fulton county; the Hon. C. L. HIGBEE, Judge, presiding.

Mr. S. CORNING JUDD, for the appellant.

Messrs. SHOPE & GRAY, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This was an action on the case by appellee against appellant to recover damages for injuries sustained, as it is claimed, for the wanton and malicious misconduct of the employees of the company. It appears that appellee was entering the village of Prairie City in a two horse buggy. The road upon

which he was traveling was parallel with and near to the railroad track. After he had passed the whistling post a short distance a passenger train came up the track in his rear, going in the same direction he was traveling in his buggy. On arriving at the whistling post witnesses for appellee testified that the engine driver gave the usual sound of the whistle, and, after it had stopped, he again commenced to whistle, with short, sharp and shrill sounds, which alarmed appellee's horses; they commenced to run and became unmanageable from fright, and overset his buggy, which was broken, threw him and his wife out, and he was seriously and permanently injured.

On the trial in the court below, the jury found a verdict for appellant and assessed his damages at $1000. Upon which the court below, after overruling a motion for a new trial, rendered judgment, and the company bring the record to this court by appeal, and ask a reversal.

In the case of the *Toledo, Wabash and Western Railway Co.* v. *Harrison,* 47 Ill. 298, this court held that, where the servants of a railway company, whilst in the discharge of their duties, perverted the appliances of the company to wanton and malicious purposes, to the injury of others, the company would be liable for resulting injuries. In that case it was claimed, and the jury found that the engine driver wantonly or negligently permitted steam to escape just as the plaintiff was crossing the railroad track, so as to frighten his team, which ran and injured him, and that was held to render the company liable for the injury. So in this case it is averred, and the jury have found, that the whistle was wantonly and maliciously sounded so as to frighten appellee's horses, whereby the injury was sustained. And if the verdict is sustained by the evidence, that case must control this.

Appellant's horses did not become frightened by the usual and proper signal given at the whistling post. It was the unusual, short, sharp and shrill sounds of the whistle which alarmed and caused them to run. The evidence clearly shows that there was nothing on the track that required such a

sound of the whistle; and the evidence of appellee shows that the sound was the alarm used to frighten stock, and not such as is usually employed as the warning at a road crossing, or on approaching a station. Appellee's witnesses testify that it was unusually energetic and harsh, and highly calculated to alarm stock. When we can see that there was nothing in front of the train on the track requiring such an alarm, and when the ordinary sound of the whistle or the ringing of the bell would fully have complied with the requirements of the law, and there was no necessity for such an alarm as was given, and when all of the evidence is considered, although it was conflicting, we are of the opinion that the jury was warranted in finding that the conduct of the employees of the road was wanton.

The servants of the road have no right, under the pretext of complying with the law, to recklessly or maliciously inflict such injuries. They must have seen, if the witnesses of appellee are to be regarded, that the sounds had frightened appellee's horses, and instead of stopping the whistle and ringing the bell, they continued the alarm until the carriage was overturned and the injury inflicted. A reasonable regard for the safety of appellee and his wife, on principles of humanity as well as legal obligation, required the servants of the company, when they saw the alarm of the horses, to have ceased whistling in this extraordinary mode; but, on the contrary, it seems to have been needlessly and recklessly continued. Persons can not be permitted to inflict such injuries under the pretext that they were complying with the statute, when the ringing of the bell, which would almost certainly have been attended with no danger to appellee, must have been a full compliance with the requirements of the statute. Had it been necessary to alarm persons or stock on the track, then such sounding of the whistle would have been not only proper but necessary. But appellee was not on the track and the engine driver knew he could not get upon

it, because, if for no other reason, he was prevented, as we understand it, by the fence between him and the track.

These acts, the jury have found, were done, and there is no evidence in the record showing their necessity. And in all of the conflict of the evidence it was for the jury to find the facts; and the jury were, we think, warranted in finding recklessness or malicious conduct on the part of the employees of the road. It was the province of the jury to weigh and consider this conflicting evidence, and reconcile it as far as they could, and if unable to do so, then to find a verdict according to the preponderance of all the evidence in the case.

This they have done, and, so far as we can see, fairly, and with the result we are not dissatisfied.

It is not mere numbers of witnesses that should control, but a variety of considerations enter into the determination as to where the weight lies. Of these are intelligence, fairness and means of information, and corroborating circumstances, which are more immediately under the observation of the circuit judge and jury than of this court, as we neither see nor hear the witnesses testify.

It is also urged that the court below erred in giving instructions for appellee. His second, sixth and eighth instructions do not state the rule of comparative negligence correctly. But a careful examination of the evidence in the record fails to show that appellee was guilty of any negligence. It is said he should have stopped, when he approached the railroad, and listened to ascertain whether a train was approaching. We fail to see how this could have been negligence; he was not intending to cross the railroad track, and was driving a gentle team, as the proof shows, accustomed to engines and trains, and had no reason to believe, if a train did pass, that such unusual sounds would be made by which his team would become alarmed. He only acted, as it seems to us, as any prudent man would have done under the circumstances.

Appellee, then, being chargeable with no negligence, these instructions could not have misled the jury, as there was no

negligence on his part to compare with that of appellant. Hence they could not have injured appellant. And a careful examination of appellant's instructions fails to show that the court erred in refusing those not given, or in modifying a portion of those that were given. To have given them without modification would have announced to the jury incorrect rules of law well calculated to mislead to an erroneous verdict. The law was fairly given to the jury for appellant by its instructions. Nor do we see that the verdict is excessive; and the court below acted properly in refusing to set it aside.

Perceiving no error in the record requiring a reversal, the judgment of the court below is affirmed.

*Judgment affirmed.*