CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY

V.

FANNIE EPPERSON.

*Railroads—Action for Damages for Personal Injuries—Acts of Fireman without the Scope of his Employment.*

1. Where a servant personally, and wholly for a purpose of his own, does an act not connected with the business of his master, and not intended by him to further the objects of his employment, the master is not liable for an injury thereby occasioned.

C., B. & Q. R. R. Co. v. Epperson.

2. In an action against a railroad company to recover damages for a personal injury, caused by the explosion of torpedoes placed on the track at a station by a fireman belonging to a freight train, it is *held:* That it does not appear from the evidence that the conductor of the train knew, prior to the explosions, that the torpedoes were upon the rails; and that it was not the duty of the conductor nor of the company to keep constant watch of the rails on both sides of the train while standing to ascertain whether dangerous explosives were placed under the cars, either by strangers or employes of the company not acting in furtherance of its business, or within the scope of their employment.

[Opinion filed February 9, 1888.]

APPEAL from the Circuit Court of Knox County; the Hon. ARTHUR A. SMITH, Judge, presiding.

Messrs. SWEENEY & WALKER, O. F. PRICE and WILLIAMS, LAWRENCE & BANCROFT, for appellant.

Messrs. A. M. BROWN and F. F. COOKE, for appellee.

Appellee bases her right of action upon the reckless, wanton and grossly negligent act of the conductor, *acting in the line of his duty and employment,* in the managing and running of his train.   If the act of the conductor in running his train upon and exploding the torpedoes was wanton, reckless or grossly negligent, and in the line of his duty, the law fixes liability.   C., B. & Q. R. R. Co. v. Dickson, 88 Ill. 431; T., W. & W. R. R. Co. v. Harmon, 47 Ill. 298; C., B. & Q. R. R. Co. v. Dickson, 63 Ill. 151; St. L., A. & C. R. R. Co. v. Dalby, 19 Ill. 353; I. C. R. R. Co. v. Read, 37 Ill. 484; N. W. R. R. Co. v. Hack, 66 Ill. 238; C., B. & Q. R. R. Co. v. Parks, 18 Ill. 460; I. C. R. R. Co. v. Reedy, 17 Ill. 580.   It is insisted these decisions clearly establish appellant's liability under the proof. Not only this, but if the reasoning and principles of law expressed in the Dalby case, 19 Ill. 353, is applied strictly, appellant would be liable for the fireman's act in placing the torpedoes, although without the line and scope of his employment.

BAKER, J.   Fannie Epperson, plaintiff below and appellee

here, sued the Chicago, Burlington & Quincy Railroad Company, appellant, in an action on the case for personal injuries and recovered judgment for $5,000 damages.

On the 4th day of July, 1885, there was a celebration at Alpha, a station on the railroad of appellant between Rock Island and St. Louis, and a procession with a band of music was formed at one of the churches in the village, which proceeded by the public highway a distance of over a quarter of a mile to a grove, where the exercises of the day were held. Appellee was at the church at the time the procession started, and for the purpose of avoiding the dust of the public road took a sidewalk which took her to the platform of appellant's depot. This platform was no part of any public road, but was adjoining the railway track, and was constructed and possessed by appellant solely for the accommodation of passengers and the transaction of the business of its railroad.

Appellee was walking upon it merely for her own convenience and pleasure, and not for the purpose of transacting any business with appellant, and her presence there had no reference to any matter pertaining to its duty as a common carrier; she was there by sufferance only and as a mere licensee and without any enticement, allurement or inducement on the part of appellant or its agents.

She was in company with some three or four friends, and a large number of persons were gathered upon and passing along the platform, and when she reached a point in front of the depot she was struck back of the right ear by a flying fragment of a torpedo shell, causing, as is claimed, a permanent paralysis of the right side of her face.

Shortly before appellee reached the platform, a freight train arrived at the station, and this train was cut in two, leaving the caboose and four freight cars standing at the depot platform, while the engine, with the remainder of the train, went to the north end of the railroad yard to do some switching. The train crew consisted of five men, the conductor, engineer, fireman and two brakemen. The engineer and two brakemen went with the engine and main portion of the train to the upper end of the yard. The conductor and the station

C., B. & Q. R. R. Co. v. Epperson.

agent unloaded from the standing cars the freight billed for Alpha, and loaded thereon the freight billed from Alpha; the conductor being in the car and handing out and taking in freight, and the station agent being on the platform, receiving freight from and handing it to the conductor; and when the unloading and loading were finished the agent went into the railroad office, and the conductor went to the caboose to take his way bills in and put them away, and was still in the caboose when the torpedoes exploded as hereafter stated.

At the time of arrival of the train at the depot the fireman got off the engine, announcing to the engineer his intention of going to get a drink.   Subsequently he went to the caboose, procured a number of torpedoes from the drawer in which they were kept, and placed them upon the track.   There was at the time considerable going on in the way of celebrating, shooting fire-crackers, etc., and the object the fireman had in view was to help celebrate.

The engineer threw out some of his cars at the upper end of the yard, cut ten cars from the engine and let them run down to the depot in charge of McCarthy, one of the brakemen, and went with his engine and front brakeman to get some loaded cars on a side track.   The ten cars on the main track which were in charge of McCarthy ran down against the four freight cars and caboose standing on the track at the platform, moved them a short distance and caused them to run over and explode the torpedoes.

There were some two dozen torpedoes kept in a drawer in the caboose car, and they were in charge of the conductor, and could not rightfully be used except under instructions from him; they were furnished by the company and were only intended to be used when the train stopped between stations, as danger signals, and were not furnished or intended for use at a station; and there was no necessity or occasion for using torpedoes in connection with that train on the day in question.

The case was tried upon issues formed on five several counts of the declaration, the 1st, 2d, 3d and 4th additional counts, and the 4th amended count.   Four of the se counts were predi-

cated upon alleged culpable misconduct of the conductor in
charge of the freight train. The first and second additional
counts charged that the conductor knew that one or more
of the torpedoes had been fastened upon the track of the
railroad adjoining the platform, by the fireman; the third ad-
ditional count alleges that the conductor having the torpedoes
in his custody and knowing the fireman was about to go to
the car and place where he had the torpedoes in charge with
intent to take a number of them and fasten them upon the
railway track adjoining the platform, permitted said fireman
to go to the car and the place in said car where he had the
torpedoes in charge, and take therefrom a number of said tor-
pedoes and fasten the same upon the track of the railway
under one or more of the cars of the train, and that said tor-
pedoes were so taken and placed with the conductor's knowl-
edge; and the fourth additional count alleged that the con-
ductor knew that certain torpedoes, dangerous to life when
exploded, were fastened upon the track of the railway ad-
joining the platform. The fourth amended count charged
that the agents of defendant were possessed of torpedoes of
the defendant placed by it in their hands, and that said agents
knew that one or more of said torpedoes had been fastened on
the track adjacent to the platform. This amended count did
not disclose who these supposed agents were who knew the
torpedoes were upon the track.

The evidence before the jury wholly excluded any theory
that either the engineer or the front brakeman had any notice
the torpedoes were upon the rails. So, also, there was no
testimony even tending to show that McCarthy, the other
brakeman, had such notice; he was engaged in switching in
a distant part of the yard until he came down the main track
on the ten loaded cars for the purpose of coupling them onto
the standing cars, and it is absurd to suppose he could possibly
have seen through the intervening standing cars the torpedoes,
about the size of half dollars, upon the iron rails.

It is admitted that the act of the fireman in placing the tor-
pedoes upon the track was outside of the scope of his employ-
ment and duty; and no claim of corporate liability is made

because of his acts and conduct. The claim made both by the pleadings and in the brief and arguments is, that the conductor in running and managing the train was the agent of appellant, and that his conduct was reckless, wanton and grossly negligent in permitting the fireman to take the torpedoes and fasten them upon the rails, in not moving them from the track, in not giving notice to those passing of the danger, and in permitting the train to run upon and explode them. It is plain he was not guilty of either negligence or wilful misconduct in any of the matters suggested, unless either he had knowledge of the acts of the fireman, or was advised the torpedoes were upon the track, or a legal and positive duty was imposed on him to know the torpedoes were there.

The positive testimony of the conductor that he saw nothing of the acts of the fireman, did not see him or any one place the torpedoes, and did not see any of them after they were fastened to the rails, is very strongly corroborated both by his own statements with reference to his whereabouts and proceedings during the time the freight train was at Alpha and by the testimony of the station agent and that of Dr. Clowes, Cole and Smith, witnesses introduced by appellee. We are unable to find in the record any evidence tending to prove that the conductor, before the explosions, had actual knowledge of what the fireman had done or that the torpedoes were under the cars. The torpedoes were evidently placed on the rails while the conductor was inside of a car, engaged in handing out and taking in freight; they were under the first car ahead of the caboose, and the car in which he was at work was the third car from the caboose, and it is wholly improbable he could have seen the operation of fastening them on the track; and there is no ground in the testimony for saying that he either saw or communicated with the fireman from the arrival of the train at the station until after the explosions. The evidence is conclusive that immediately after the explosions the conductor knew they had been occasioned by torpedoes on the rails, and shortly thereafter ascertained torpedoes were missing from the drawer in the caboose. A circumstance which seems to be relied upon as

proving the guilty knowledge of the conductor, is the fact he made no inquiries for the purpose of ascertaining who had put the torpedoes on the track. That circumstance is of but slight, if any, probative force, to show antecedent knowledge on his part. After the explosions, he undoubtedly knew that improper use had been made of torpedoes furnished him for use as danger signals only, and that thereby the mischief and injury in question had been occasioned. He, no doubt, surmised they had been thoughtlessly and surreptitiously placed upon the track by one of the train men, and purposely avoided making any investigations that might elicit information which it would be his official duty to report to the company. It seems to us this is the only fair and reasonable conclusion to reach from his conduct and the surrounding circumstances, and that the conclusion sought to be deduced therefrom by appellee, that he had previous knowledge touching the placing of the explosives, is unfair, unreasonable and strained. So, also, a desire to screen the fireman, who he probably supposed or suspected was the person in fault, would fully account for what he said to Aaron Brown, and the reasonable deduction from the conversation testified to by the latter is simply that the conductor was influenced in what he said by such desire.

This subsequent conduct, and these subsequent and private motives and desires of the conductor, would impose no liability upon appellant and would not make it responsible for antecedent injuries, in regard to which no culpability had attached to the corporation. We are of the opinion, from the evidence, that it is almost if not quite absolutely certain that the conductor had no actual knowledge or notice, prior to the explosions, that the torpedoes were upon the rails, or of the acts or intentions of the fireman in respect to getting or placing such torpedoes.

Was it the duty of the conductor to have known the torpedoes were on the track? We think not. He knew they were for use only between stations, and as danger signals to other trains; that there was no occasion for using them at that time or place; that no one had the right to fasten them upon

the rails without instructions to that effect from him, and that he had given instructions of that kind to no one. He also well knew the freight train had moved over the track in front of the platform only a few moments before the explosions and that it was then clear of all obstructions and perfectly safe. He was not required to anticipate that either a stranger, or an employe of the company, acting without and beyond the scope of his employment, might place either torpedoes or dynamite or other destructive implements under the wheels of the standing cars; nor was he bound to see and take notice of what were apparently but pieces of paper about the size of half dollars when, excluding those who saw the fireman place them there, but one person in the large crowd that was gathered upon and passing over the platform is shown to have seen them, and he only after his attention had been attracted by the first explosion and the car-wheels were passing over the others. It would be unreasonable to require either the conductor or the company to keep constant watch of the rails on both sides of a standing freight train in order to ascertain whether dangerous explosives or other obstructions of the size of those in question were placed under the cars, either from motives of malice or from mere wantonness, by either strangers or by employes of the company not acting in furtherance of the business of the corporation or within the scope of their employment. Were such duty imposed upon the conductor, it would greatly interfere with the performance of his other duties and with prompt and efficient transportation of freights upon the railroad; and were such duty required of the company, it would necessitate the employment of additional servants for that express purpose, and would impose upon it an unnecessary and useless burden.

There is no evidence to support the charge of culpable negligence or of reckless, wilful and wanton misconduct on the part of the conductor of the train. When the fireman from wantonness and a desire to help celebrate the Fourth of July placed the torpedoes under the cars, it was an abandonment by him of the service of the company, and the latter was not liable for the consequences of his acts. Even if a servant is en-

gaged in the performance of his duty to his master, yet if he personally and wholly for a purpose of his own does an act not connected with the business of such master and not intended by him to further the objects of his employment, the master is not liable for an injury thereby occasioned. Cooley on Torts, p. 535; Johnson v. Barber, 5 Gilm. 425; Fuller v. Voght, 13 Ill. 278; Oxford v. Peter, 28 Ill. 434; T., W. & W. Ry. Co. v. Harmon, 47 Ill. 298; Wharton on Negligence, Sec. 168.

The view we have taken of the case renders it wholly unnecessary to consider other matters that are involved in the assignments of error and discussed by counsel. Appellee has no cause of action against appellant. The judgment is reversed.

*Judgment reversed.*