## TEXAS & P. RY. CO. v. SCOVILLE.

(Circuit Court of Appeals, Fifth Circuit. May 22, 1894.)

### No. 208.

MASTER AND SERVANT—LIABILITY TO THIRD PERSONS—WANTON AND MALICIOUS ACTS OF SERVANT.

The wanton and malicious use of the steam whistle of a locomotive, by servants of a railroad company who are in charge of the locomotive, while it is in motion on a regular or authorized run, is an act within the scope of their employment, so far as to charge the company with liability for injuries caused thereby. Locke, District Judge, dissenting.

In Error to the Circuit Court of the United States for the Eastern District of Texas.

This was an action by P. A. Scoville against the Texas & Pacific Railway Company for damages for personal injuries. The circuit court overruled a demurrer to the petition, and rendered judgment for plaintiff. Defendant brought error.

T. J. Freeman, for plaintiff in error.

C. C. Leverett and R. C. De Graffenried, for defendant in error.

Before McCORMICK, Circuit Judge, and LOCKE, District Judge.

McCORMICK, Circuit Judge. P. A. Scoville, the defendant in error, brought this action against the Texas & Pacific Railway Company, the plaintiff in error, to recover damages for injuries he claimed to have received from the willful and wanton misconduct of its servants while engaged in its business. The part of his pleading pertinent to the questions raised on this writ of error is as follows:

"Plaintiff, for cause of action, alleges that on the 2d day of May, 1891, he was riding on horseback (returning home from Longview, Texas) along a public road running parallel with said railway of defendant company (said road on which plaintiff was so riding on horseback being about twenty-five yards south of said railway), and that defendant company, its agents and employés, knew or could have known of the existence of said public road, and its proximity to said defendant company's railway, the same having been used by the traveling public for the period of fifteen years for travel, and in full view of said railway company's agents and employés; that immediately south of the road on which plaintiff was riding was a fence; that while plaintiff was passing along said road, as above set forth and described, the place on said road on which he was riding as above indicated being about one-fourth of a mile from said town of Longview Junction, a point on said railway, a train of cars in charge of, and under the control of, the agents and employés of defendant company, while coming east from said Longview Junction, while nearing the plaintiff, and when directly opposite the plaintiff, the agents and employés of the defendant company, with the intention to frighten plaintiff's horse, commenced, and continued until some distance beyond plaintiff, to blow the whistle of the engine of said train of cars in a manner most calculated to frighten and render unmanageable horses and other domesticated animals; that the manner of blowing said whistle at the time and the place above mentioned was not called for nor demanded by any event or circumstances within the range of defendant company's legitimate business; that when the agents or employés of defendant company began to near, and until they were beyond, plaintiff's horse, they began to give, and continued to give, keen and frightful sounds, in quick and rapid succession, by means of the whistle, the immediate effect of which was to frighten the

plaintiff's horse, which he was then and there riding, causing his horse to leap and jump with him in the most violent manner; that, by reason of such violent capering and jumping of his horse, he, the plaintiff, was placed in great danger of being killed and greatly injured, and was seriously and permanently injured. Plaintiff states that the agents and employés of the defendant company saw the effect of said frightful noise on plaintiff's horse when the whistling commenced, and while the same was going on, and might have ceased making the same, and thereby prevented the said injuries, or greatly lessened the same, but for no legitimate purpose, willfully, knowingly, negligently, wantonly, and intentionally, and only for the purpose of gratifying a base curiosity and malignant spirit, they commenced and continued blowing said whistle in the most frightful manner of which they were capable."

The answer of the railway company is not brought up in the transcript, but it appears from the judgment of the circuit court that a general demurrer to the plaintiff's petition was overruled. Four errors are assigned, but each involves substantially the same question, which the counsel for the railway company, in his printed brief, propounds as follows:

"Is a master responsible for the willful, wanton, and malicious acts of his servants, not done for the master's benefit, and not within the scope of the employment of the servant, and not done by the authority or under the order of the master, but committed willfully, maliciously, and exclusively for the servant's private ends or malice?"

The counsel formulates his answer to his question thus:

"A master is not liable for the willful, wanton, malicious, and deliberate wrongs committed by the servant, not done on the master's account or to further his interest, but done willfully, maliciously, and exclusively for the servant's private ends or malice."

It will be observed that both the question and its answer, as propounded by counsel, are somewhat broader in their terms than the question strictly raised by the general demurrer to the pleading of the plaintiff. The question stated by counsel has exercised judicial inquiry and deliberation from the earliest times. In the often-quoted case of McManus v. Crickett, 1 East, 106, decided in the first year of this century, Lord Kenyon said:

"It is a question of very general concern, and has been often canvassed, but I hope at last it will be at rest. * * * When a servant quits sight of the object for which he is employed, and without having in view his master's orders, pursues that which his own malice suggests, he no longer acts in pursuance of the authority given him, and his master will not be answerable for such acts."

In the familiar case of Wright v. Wilcox, 19 Wend. 343, Judge Cowen says:

"The line where the master's liability shall terminate must be placed somewhere, and the acquiescence of Westminster Hall for many years on the rule we have cited, as laid down by Lord Kenyon, is an evidence of the common law not to be resisted, especially as it will not be found, I imagine, to conflict with any general principle of that law."

In Isaacs v. Railroad Co., 47 N. Y. 122, Judge Allen, in referring to the case of Hibbard v. Railroad Co., 15 N. Y. 455, says:

"Some of the expressions in the opinions of the judges * * * are open to criticism, as not in harmony with the later authorities, and would not probably be regarded as sound, although they are supported by the earlier

cases and by the elementary authorities;" citing McManus v. Crickett and the authorities therein cited. and Wright v. Wilcox.

In Howe v. Newmarch, 12 Allen, 49, it was held that if the act was done by the servant in the execution of the authority given him by his master, and for the purpose of performing what the master had directed, the master will be responsible, whether the wrong done be occasioned by negligence, or by a wanton and reckless purpose to accomplish the master's business in an unlawful manner.

In Wallace v. Navigation Co., 134 Mass. 95, it is said:

"The instruction given treats the defendant as exonerated from responsibility if the act done by its servant was wanton and malicious, and disregards the inquiry whether he was acting under the general authority of the defendant, as master, and for the purpose of doing its work. There are respectable authorities, certainly, such as Turnpike Co. v. Vanderbilt, 1 Hill, 480, and Wright v. Wilcox, 19 Wend. 343, which hold that where the acts of a servant are willful the master is not responsible, even if they are done in the performance of his business, because such willful acts are held to be a departure from the master's business."

The court then cites Howe v. Newmarch, supra, as holding that the act being willful or malicious is not sufficient to effect a departure from the master's business, and says that case has been since repeatedly recognized, and seems to express the true rule to which it relates.

In Rounds v. Railroad Co., 64 N. Y. 129, it is said:

"It is quite useless to attempt to reconcile all the cases. The discrepancy between them arises, not so much from a difference of opinion as to the rule of law on the subject, as from its application to the facts of a given case."

Strong as was Lord Kenyon's hope that he had put the question at rest, and reluctant as have been Westminster Hall and the courts of last resort in this country to pass the line he set to terminate the master's liability, an examination of the cases shows that the most enlightened and conservative courts no longer hold that a willful and malicious purpose is prima facie a departure from the master's business. It will be conceded that, as to passengers on railroads, the line drawn by Lord Kenyon does not now receive the sanction of the courts. It is sometimes contended that this departure results from the contract between the passenger and the carrier, and the reasoning to support the decisions declining to follow the earlier cases often gives emphasis to this feature. No such feature, however, is present in the case of Wallace v. Navigation Co., nor in Howe v. Newmarch; and while perhaps most of the cases have presented that feature, and counsel and judges have become so familiar with it that it readily occurs to the minds of both, and often finds expression, it will be found that the cases are few where, in recent years, recovery has been denied strictly on the ground that, as to persons not passengers, public carriers are not liable for the willful or malicious acts of their servants in the use of the instruments of carriage committed to their control in the conduct of such carriage or business. There are some such cases. The most recent of such that I have examined, and one bearing close analogy to the case we have at bar, is Stephenson v. Southern Pac. Co. (Cal.) 29 Pac. 234.

In the case of Railroad Co. v. Derby, 14 How. 468, it is said:

"Although, among the numerous cases on this subject, some may be found in which the courts have made some nice distinctions, which are rather subtile and astute, as to when the servant may be said to be acting in the employ of his master, yet we find no case which asserts the doctrine that a master is not liable for the acts of a servant in his employment, when the particular act causing the injury was done in disregard of the general orders or special command of the master. Such a qualification of the maxim respondeat superior would in a measure nullify it. A large proportion of the accidents on railroads are caused by the negligence of the servants or agents of the company. Nothing but the most stringent enforcement of discipline, and the most exact and perfect obedience to every rule and order emanating from a superior, can insure safety to life and property. The intrusting such a powerful and dangerous engine as a locomotive to one who will not submit to control and render implicit obedience to orders is itself an act of negligence,—the causa causans of the mischief,—while the proximate cause, or the ipsa negligentia, which produces it, may truly be said in most cases to be the disobedience of orders by the servants so intrusted. If such disobedience could be set up by a railroad company as a defense, when charged with negligence, the remedy of the injured party would in most cases be illusive, discipline would be relaxed, and the danger to the life and limb of the traveler greatly enhanced."

Only negligent misconduct was involved in the case just cited; hence, the language of the court is limited to negligence. The party injured was traveling by railroad; and it may be insisted that only such travelers, and by the railroad sought to be charged, were in contemplation of the court. The whole text of the opinion shows that its logic has a larger scope. The injury was not caused by the negligence or other misconduct of the servants engaged in carrying this traveler. His right to recover damages was expressly held to be independent of any contract for carriage. One who has such a contract may found, in part at least, his right to recover on the contract to carry safely. But the maxim of respondeat superior is wholly irrespective of any contract, expressed or implied, or any other relation, between the injured party and the master.

In the case of Culp v. Railroad Co., 17 Kan. 475, it appears that the plaintiff was traveling in his private wagon, drawn by his own team of horses, on the public highway, near a station on the defendant's road, at the time when a train of its cars was standing there on its track; that the servants of the company, carelessly, unnecessarily, and with gross negligence, caused the steam whistle to be blown with great violence, at which the plaintiff's team took fright, ran, and the plaintiff was injured. A demurrer to the petition was sustained by the trial judge, which on appeal was held to be error. In delivering the opinion of the court, Judge Brewer said:

"These acts [sounding the whistle, and causing steam to escape, etc.], which at times are legal and necessary, may be done without any necessity therefor, out of mere heedlessness and negligence, or with a wanton and criminal intent to do wrong. * * * In this case, while the defendant might, under some circumstances, lawfully, and without subjecting itself to responsibility for injuries resulting therefrom, cause the whistle to be blown, * * * yet the same act, done without any necessity therefor,—done negligently and heedlessly,—might render the defendant responsible for all injuries caused thereby. [Citing] Railway Co. v. Harmon, 47 Ill. 298. 'Sic utere

tuo ut alienum non laedas' regulates the conduct and determines the. liability of corporations, as of individuals."

In the case cited by Judge Brewer the trial court had charged the jury:

"If defendants' engineer, with intent to frighten plaintiff's horses, unnecessarily and wantonly let off steam or blew a whistle, so that plaintiff's horses ran off and injured him, defendants are guilty. Malice in the engineer need not be proved positively, but may be inferred."

—And refused the defendant's request to charge:

. "If the injury was caused by the willful and malicious act of the agent of the defendants, the defendant is not liable."

There was a verdict and judgment for plaintiff, which was affirmed on appeal. In a well-considered opinion, replete with sound reasoning, that court, in conclusion, uses this language:

"When employed in the discharge of his duty, or while engaged in operating their engines and machinery on their road, if he uses such agencies in an unskillful manner, or so negligently as to occasion injury to another, or even if, while so engaged, he willfully perverts such agencies to the purpose of wanton mischief and injury, the company should respond in damages."

In the case brought to us by this writ of error the engineer and fireman in charge of the locomotive engine were driving it on the tracks of the company, pulling a regular train of cars, running on schedule time, charged to sound the whistle frequently, with blasts differing in time and tone, according to the signal to be given or the purpose served. If injury had resulted from failure to sound it at the required times and in the required way, the company might have been held liable. If unnecessarily and negligently sounded,— as, for instance, when the train was standing where it should be, and was not about to start, or the time had not arrived for giving the signal to start,—and an injury had resulted from such act or omission, for such negligence the company would be liable. As was aptly said by the supreme court of Illinois, the result to the party injured is the same whether it is the effect of negligence, or from wanton and willful purpose. The malice pleaded in this case is only that which the law implies from an act of wanton cruelty. We are in danger of refining too much when we attempt to distinguish between a negligent and a wanton or malicious use of the steam whistle of a locomotive engine in charge of the proper servants of the company, while engaged in pulling its regular trains, moving at schedule rate, on schedule time, under direct, constant telegraphic orders. If it is contended that in this act the servants were not in the master's service, because not employed to blow the whistle wantonly and maliciously to frighten travelers or their horses, that contention is fully answered by the supreme court of Illinois,—that these servants are not employed to do any negligent or unlawful act, and such a test would exempt the company from liability from all affirmative acts of these servants violating the rights of others. Railway Co. v. Harmon, 47 Ill. 298; Railroad Co. v. Dickson, 63 Ill. 151. It is conceded that, in case of passengers receiving injury from the action of the servants of the railroad company, no such distinction between negligent and wanton and

malicious conduct obtains. It is contended that in such cases the corporation is held because of its contract to carry safely. That is one reason, and a cogent one, for holding the company in such cases, but it is only one of the grounds for so holding. If public policy and safety require that carriers who undertake to convey persons by the powerful, but dangerous, agency of steam, shall be held to the greatest possible care and diligence, and, whether the consideration for such transportation be pecuniary or otherwise, the personal safety of the passengers should not be left to the sport of chance, or the negligence of carriers' agents, or their wanton malice, the same public policy and safety demand that these all-pervading corporations, who commit to the custody and use of their servants, in such great numbers, these terrible expressions of the powerful and dangerous agency of steam, shall maintain discipline in their ranks, and, by the utmost care and diligence, protect the public, not only from its negligent use, but from its wanton or malicious use, by these servants, to the hurt of any one in the lawful enjoyment of the state's peace. To say the engineer and fireman who have charge of the locomotive on a regular run may, while so running it, so blow the whistle, wantonly and maliciously, that by their manner of blowing it and motive for blowing it, in the indulgence of their love of mischief or other evil motive, they separate themselves, in and by that act, and for that instant, from the company's service, is to refine beyond the line of safety and of sound reason. Public policy and safety require that the use of the steam whistle by those servants who are in charge of the locomotive, and while the locomotive is in motion on its regular or authorized runs, should be held to be done within the scope of the employment of those servants, so far as to charge the company with liability therefor. The rule propounded by the plaintiff in error, so far as it is sound, does not reach the case. In my opinion the judgment of the circuit court should be affirmed.

PARDEE, Circuit Judge, being recused, this case was heard by Judges McCORMICK and LOCKE, who differing in opinion as to the law of the case, the judgment of the circuit court is affirmed by a divided court.