CLARK, C. J., and HOKE, J., concurring, in part; CONNOR and WALKER, JJ., dissenting, in part.
The plaintiff's evidence tends to prove that the defendant is operating a railroad for conveying lumber; that on 20 May, 1903, the engineer of one of its log trains, as he was passing near plaintiff, wantonly and unnecessarily blew the whistle of the engine on purpose to *Page 37 
frighten plaintiff's mule; that the whistle was blown violently and for some time, and for the sole purpose of frightening the mule; that this blowing did not take place at a crossing and was not done in furtherance of the defendant's business. The evidence tends to prove that the engineer blew the whistle for amusement and to "make the mule dance."
His Honor submitted these issues:
1. Did defendant's engineer, fireman, or servants unlawfully and wantonly halloo, make noise, and sound the whistle of the engine for the purpose of frightening the horses of the plaintiff, and was the plaintiff injured thereby? Answer: "Yes."
2. What damage, if any, is plaintiff entitled to recover? Answer: "One thousand dollars."
The defendant's counsel contend, through prayers for (49) instruction, first, that it is not liable at all for the wanton tort of its engineer, not done in furtherance of its business and not in the discharge of his duty; second, that it is liable in any event, under the facts of this case, for actual damage only.
1. In considering the first proposition, I regard the defendant, although not a carrier of passengers, as a railroad, within the ordinary acceptation of that term. Sawyer v. Lumber, Co., 145 N.C. 24. I admit that the entire evidence shows that plaintiff's cause of action grows exclusively out of the wrongful and unnecessary act of the engineer, done wantonly for his own amusement. I fully agree that the rule obtains generally that a master is not answerable in damages for the wanton and malicious act of his servant when not done in the legitimate prosecution of the master's business, and that the evidence in this case presents a "positive affirmative tort, pure and simple," committed by the engineer without the master's knowledge, approval, or ratification.
If we had not held that lumber railroads of the kind operated by defendant are to be governed by the same rule in relation to the public and to employees as steam roads which are common carriers, I should sustain the contention of defendant in this case. Hemphill v. Lumber Co., 141 N.C. 487;Bird v. Leather Co., 143 N.C. 283. But this immunity from liability for tort referred to is not generally extended to railroads, whose servants are intrusted with such dangerous instrumentalities and have thereby such unusual and extensive means of doing mischief. This exception to the general rule seems to be established by most abundant authority and for the reason I have given.
In the well considered case of Bittle v. R. R., 23 L.R.A., 282, the New Jersey Apellate [Appellate] Court says: "The rule obtains generally that a master is not answerable in damages for the wanton and malicious acts of his servant. Yet this immunity is not generally extended to railroad corporations, whose servants have such extensive means (50) *Page 38 
of doing mischief. Accordingly, it has been established that if their servants, while in charge of the company's engines and machinery and engaged about its business, negligently, wantonly, or willfully pervert such agencies, the company must respond in damages, and this is the principle deducible from the authorities upon this subject."
Mr. Jaggard expresses the principle as follows: "The master's duty to third persons may arise from ownership or custody of dangerous things, and it may extend to the conduct of the servant, though forbidden, and for the servant's private purpose and not for the master's benefit." Jaggard on Torts, sec. 88.
It is held by the Circuit Court of Appeals of the United States that the wanton and malicious use of the steam whistle of a locomotive by servants of the railroad company in charge of the locomotive, while in motion on a regular run, renders the company liable for damages on account of injuries caused thereby. R. R. v. Serville, 62 Fed., 730. The Supreme Court of Illinois held the railroad liable in a case where the engineer, while his locomotive was standing near a crossing at the instant a person was passing the track in front of his engine, negligently or maliciously caused the steam to escape, whereby the team was made to run off and injure plaintiff.R. R. v. Harmon, 47 Ill. 299. This view of the law by which railroads are excepted from the general rule is supported by an array of authority. R. R.v. Harrison, 47 Ill. 298; R. R. v. Dickson, 63 Ill. 151; Ockridge v. R.R., 90 Ga. 233; R. R. v. Triolett, 54 Ark. 289; Cobb v. R. R.,37 S.C. 194; R. R. v. Starns, 56 Tenn. 52; Everett v. Receivers,121 N.C. 521; Brendle v. R. R., 125 N.C. 474.
I think the form and wording of the first issue submitted in this case should make no difference whatever in considering the liability of the defendant for some damage. The case should be considered as if the (51) usual issue as to whether plaintiff was injured by the negligence of defendant had been submitted. I agree with JudgeMcCormick, in R. R. v. Scoville, supra, that "We are in danger of refining too much when we attempt to distinguish between a negligent and a wanton or malicious use of the steam whistle of the locomotive engine in charge of the proper servants of the company."
This seems to be the view of this Court in Foot v. R. R.,142 N.C. p. 52, where it is said: "The breach of duty can be, and frequently is, intentional and willful, and yet the act may be negligent." To same effect is Hayes v. R. R., 141 N.C. 197. The wrongful act in this case, in its relation to the engineer, was a wanton tort; in relation to the master it was merely a breach of duty, growing out of the doctrine of negligence, for which motives of public policy require that the master should compensate the plaintiff for the injury sustained. *Page 39 
2. The defendant offered the following prayer, and excepted to the refusal of the court to give it:
"The plaintiff has offered no evidence tending to show that the defendant authorized or ratified the wrongful act of defendant's agents and servants, and the plaintiff is not entitled to recover any amount as exemplary, punitive, or vindictive damages."
I think the court erred in refusing the prayer and in instructing the jury that they might award punitive damages.
It seems to me that, under all the authorities governing the relation of master and servant, and the liability of the former for the tort of the latter, the defendant is not liable at all for the act of the engineer, except upon the one ground that I have stated. To hold it liable on any other ground is directly against our own recent utterance. Sawyer v.R. R., 142 N.C. p. 5, and cases cited. This ground of liability, it appears to me, does not warrant the imposition of punitive damages in the absence of evidence tending to show either authorization, ratification, or negligence upon the part of its managers in (52) selecting a reckless and improper engineer. How far a principal may be mulcted in punitive damages for the act of his agent is a question about which there is much contrariety and not a little confusion of authority; yet the defendant's contention, upon the facts of this case, appears to me to be supported by most abundant authority, is not in conflict with any of our own decisions, and is founded upon reason and justice. I admit that where the servants of a corporation engaged in carrying passengers are guilty of acts towards the injured party as a passenger which would subject the servants to exemplary damage, the great weight of authority holds the corporation liable to similar damages, without proof that it ratified or directed the wrongful acts. 3 Sutherland, sec. 950, where all the cases are collected. This is because the corporation can act only through its agents; and when it commits to them the safety and comfort of persons in transitu over its road, the authority of the corporation pro hac vice is vested in such agents, and "as to such passengers they are the corporation."
Upon this theory a railroad company may be held liable for punitive damages for the insults and rudeness of a conductor to a passenger. Holmesv. R. R., 94 N.C. 318. I admit that where the agent of the company is acting within the scope of his duty and in furtherance of its business, the company may be held, under certain circumstances, liable for exemplary damages, even though the injured party is not a passenger. Thus, if the agent of the carrier maliciously uses unnecessary force in ejecting a trespasser, it may be a case for punitive damages. Thompson on Negligence (2d Ed.), sec. 3253. Upon this principle this Court allowed such damages against the company for the conduct of its *Page 40 
brakeman in ejecting a trespasser from a train with reckless and unwarranted violence. Hayes v. R. R., 141 N.C. 199. In that case this Court said: "It would seem, from the authorities, that where the brakeman is (53) acting for the company and within the scope of his agency, the general principles of the law relating to exemplary or punitive damages apply to him as well as the conductor." It was the duty of the brakeman to eject trespassers, and in doing so he represented his master, who was held responsible to the same extent that his servant would be held if he acted maliciously and with unnecessary force. As I read the authorities, the master cannot be punished if the servant, in the language of Lord Kenyon, "quits sight of the object for which he is employed and, without having in view his master's orders, pursues that which his own malice suggests. He then no longer acts in pursuance of the authority given him." McManus v. Crickett, 1 East, 106.
Mr. Sedgwick declares that it is the better opinion that no recovery for exemplary damages can be had against the principal for the tort of the agent unless done under the authority of the principal, or he afterwards approved it, or was grossly negligent in hiring such a servant, or in not preventing him from committing the act. 1 Sedgwick on Damages, sec. 378, and cases cited.
The Encyclopedia, in discussing the liability of corporations for punitive damages, says: "A corporation is liable in exemplary damages for the tortious acts of its agents, if done within the scope of theirauthority, in all cases where natural persons, acting for themselves, guilty of like tortious acts, would be liable to such damages." 12 A. E., 40.
Cyclopaedia states, after discussing both sides of the question, that the better opinion is that a principal should not be held liable in exemplary damages unless it be shown that the agent acted within his authority, or that the principal approved the act, participated in it, or was guilty of negligence in selecting his servant. 13 Cyc., 114. In support of his text the author cites a great array of cases from many States of the Union.
Mr. Sutherland, in discussing exemplary damages, sums it up (54) that, where the servant commits a tort in the exercise and scope of his agency, it is deemed, for purposes of compensation, his master's tort, and exemplary damages are allowable. But, says the author, "it is otherwise as to torts which the servant steps aside from or goes beyond his master's employment to commit." "The master is only to be held liable (in exemplary damages) for the act of his servant when the latter is within the scope of his employment."
It has been held by the Supreme Court of the United States and by some twenty or more State courts of last resort that neither a corporation nor an individual is liable for exemplary damages for the pure torts of employees, although committed while generally on duty, where the act *Page 41 
was without authority, not ratified, and diligence was exercised in selecting suitable agents. Prentice v. R. R., 147 U.S. 106. See list of courts and cases so holding, cited in 13 Cyc., 117.
There is no judicial deliverance that I can find, from the original charge of Chief Justice Pratt (afterwards Lord Camden), quoted by JusticeGray in the Prentice case, supra, down to the present time, wherein exemplary damages were allowed or justified, other than as a punishment upon the offender. As they are never awarded by way of compensation, but only for punishment of the offender and as a warning to others, they can only be awarded against one who has actually or by legal construction participated in the offense. Prentice v. R. R., supra.
In discussing the facts in the opinion of the Court in the case of theAmiable Nancy, 3 Wheaton, 546, Justice Story pronounces the transaction a gross and wanton outrage. Nevertheless, in weighing the extent of the liability of the owners, he says: "They are innocent of the demerit of this transaction, having neither directed it nor countenanced it nor participated in it in the slightest degree. Under such circumstances we are of the opinion that they are bound to repair all the real injuries and personal wrongs sustained by the libellants, but they (55) are not bound to the extent of vindictive damages."
The rule in admirality as to exemplary damage is the same as in the common-law courts. Boston Co. v. Fiske, 2 Mason, 119-121.
Chief Justice Martin expresses the view of the Louisiana Court with much clearness: "It is true, juries sometimes very properly give what is called smart money. They are often warranted in giving vindictive damages as a punishment inflicted for outrageous conduct. But this is only justifiable in an action against the wrongdoer, and not against persons who, on account of their relation to the offender, are only consequentially liable, for his acts, as the principal is responsible for the acts of his agent." 8 La. 26.
"This rule has same application to corporations as individuals."Prentice case, supra. The true ground for holding the master liable in exemplary damages is stated very clearly by Justice Field for the Supreme Court of Massachusetts: "The logical difficulty of imputing the actual malice or fraud of an agent to his principal is, perhaps, less when the principal is a person than when it is a corporation; still, the foundation of the imputation is not that it is inferred that the principal actually participated in the malice or fraud, but that, the act having been done for his benefit by his agent, acting within the scope of his employment in his business, it is just that he should be held responsible for it in damages."Lathrop v. Adams, 133 Mass. 471.
I take it now to be generally accepted law that where the agent of a corporation commits a wanton and malicious tort when acting for the *Page 42 
master in the scope of the agency and in furtherance of his master's business, he acts "as and for" the corporation, and for the time being is the corporation, so that the criminal intent necessary to warrant the imposition of exemplary damages is thus brought home to the (56) corporation. But where the agent, going out of the line of his duty, beyond the scope of his agency and not in furtherance of his master's business, commits a pure tort on his own account, the master, whether an individual or a corporation, is never to be held in exemplary damages. There may be cases where, as in this case and that of the Amiable Nancy, the master should award just compensation for all real injury sustained, but there are none that I can find where, under such circumstances, the master has been made to pay smart money in addition. If the evidence had disclosed that the engineer, in order to frighten plaintiff's mule, recklessly, wantonly, and unnecessarily blew his whistle when approaching a crossing, where it was his duty to blow, then his act would be constructively the corporation's act, and his malice and wantonness could be imputed to it. But it is admitted there is no such evidence or finding. The entire evidence shows that it was the pure tort of the servant, committed without the scope of his duty and not in furtherance of his master's business. While reasons of public policy may hold the master liable for compensatory damages solely upon the grounds stated heretofore in his opinion, there are no reasons of policy or justice for punishing the master for the malicious tort of his servant, which the master could not help, which was not done in the scope of the servant's duty, from which the master derived no benefit, which he did not ratify, and under circumstances when the servant could not be said in any sense to represent or act for him.
For the reasons given, I think there should be a new trial on the issue of damages.